# REGISTER OF ACTIONS
## CASE NO. D-1113-CV-2025-00521

| Board of Education for the Gallup-McKinley County Schools, et. al., v. Stride, Inc., et. al. | § § § § § § § | Case Type: | **Tort** |
|---|---|---|---|
| | | Date Filed: | **08/27/2025** |
| | | Location: | |
| | | Judicial Officer: | **Pederson, R. David** |

---

### PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| Defendant | **Hawf, Adam** | |
| Defendant | **Rhyu, James** | |
| Defendant | **Stewart, Peter** | |
| Defendant | **Stride, Inc.** | |
| Defendant | **Stutler, Ryan** | |
| Plaintiff | **Board of Education for the Gallup-McKinley County Schools** | **Andrew M. Sanchez, Sr.** *Retained* 505-259-2069(W) |
| Plaintiff | **Hyatt, Michael** | **Andrew M. Sanchez, Sr.** *Retained* 505-259-2069(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | | |
|---|---|---|
| 08/27/2025 | **Cause Of Actions** | Miscellaneous |
| | Action Type | Action |
| 08/27/2025 | **OPN: COMPLAINT** | |
| | *Verified Complaint for Fraud, Unfair Trade Practices, Constructive Fraud, Civil Conspiracy, Tortious Interference with a Contract, Unjust Enrichment, Defamation, Negligent Misrepresentation, Prima Facie Tort, Malicious Abuse of Process, Declaratory Judgment and Injunctive Relief* | |

---

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| | **Plaintiff** Board of Education for the Gallup-McKinley County Schools | | |
| | Total Financial Assessment | | 132.00 |
| | Total Payments and Credits | | 132.00 |
| | **Balance Due as of 09/08/2025** | | **0.00** |
| 08/27/2025 | Transaction Assessment | | 132.00 |
| 08/27/2025 | File & Serve Payment | Receipt # GALD-2025-787 | Board of Education for the Gallup-McKinley County Schools (132.00) |

**EXHIBIT A**

FILED
11th JUDICIAL DISTRICT COURT
McKinley County
8/27/2025 12:00 AM
JODIE SCHWEBEL
CLERK OF THE COURT
Monica Sanchez

**STATE OF NEW MEXICO**
**COUNTY OF MCKINLEY**
**ELEVENTH JUDICIAL DISTRICT COURT**

BOARD OF EDUCATION FOR
THE GALLUP-MCKINLEY COUNTY
SCHOOLS and MICHAEL HYATT as
its Superintendent of Schools,

                Plaintiffs,

      v.                                         No.  D-1113-CV-2025-00521

STRIDE, INC., a Delaware limited liability
company d/b/a K12 VIRTUAL SCHOOLS,                    Pederson, R. David
LLC., JAMES RHYU, as the Chief
Executive Officer and Chair of the Board of
Directors of Stride, Inc., PETER STEWART
as the Senior Vice President of School
Development for Stride, Inc., RYAN
STUTLER, as the Vice President of Finance
for Stride, Inc., and ADAM HAWF, as its
Superintendent of Schools,

                Defendants.

<u>**VERIFIED COMPLAINT FOR FRAUD, UNFAIR TRADE PRACTICES,
CONSTRUCTIVE FRAUD, CIVIL CONSPIRACY, TORTIOUS INTERFERENCE
WITH A CONTRACT, UNJUST ENRICHMENT, DEFAMATION, NEGLIGENT
MISREPRESENTATIONS, PRIMA FACIE TORT, MALICIOUS ABUSE OF PROCESS,
DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF**</u>

      COME NOW Plaintiffs, Board of Education for the Gallup-McKinley County Schools and

Michael Hyatt, as its Superintendent of Schools, by and through their attorneys of record, Himes,

Petrarca & Fester, Chtd. (Andrew M. Sanchez), and for their Verified Complaint against

Defendants allege as follows:

<u>**JURISDICTION & VENUE**</u>

      1.     The Board of Education for the Gallup-McKinley County Schools is the governing

body of the Gallup-McKinley County Schools (hereinafter "School District"), a political

**EXHIBIT A**

subdivision of the State of New Mexico, with its principal place of business in McKinley County, New Mexico. The Board of Education is a legal entity with the capacity to sue under State law.

2.    Michael Hyatt is a resident of McKinley County and is employed as the Superintendent of Schools for the Gallup-McKinley County Schools and was employed as such at all times relevant to the Complaint.

3.    Upon information and belief, Defendant Stride, Inc. d/b/a K12 Virtual Schools, Inc. (hereinafter "Stride") is a for-profit business soliciting and doing business in the State of New Mexico providing virtual educational services.

4.    Upon information and belief, James Rhyu is the Chief Executive Officer and Chair of the Board of Directors of Stride, Inc. and is a management official capable of binding Defendant Stride for doing business in New Mexico.

5.    Upon information and belief, Peter Stewart is the Senior Vice President of School Development of Stride, Inc. and is a management official capable of binding Defendant Stride for doing business in New Mexico.

6.    Upon information and belief, Ryan Stutler, is the Vice President of Finance of Stride, Inc. and is a management official capable of binding Defendant Stride for doing business in New Mexico.

7.    Upon information and belief, Adam Hawf, is the Superintendent of Schools of Stride, Inc. and is a management official capable of binding Defendant Stride for doing business in New Mexico.

8.    Stride solicited and contracted with Plaintiff Board of Education for the Gallup-McKinley County Schools in the State of New Mexico pursuant to the provisions of the New Mexico Procurement Code for business conducted in Gallup New Mexico, County of McKinley

**EXHIBIT A**

and throughout the State of New Mexico, to provide virtual educational services for students enrolled with the Gallup-McKinley County Schools.

9.      Venue is proper with this Court.

10.     The Court has subject matter jurisdiction and personal jurisdiction over the Parties.

**FACTUAL ALLEGATIONS**

11.     The Plaintiffs re-allege and incorporate by reference the foregoing Paragraphs 1 through 10 as if fully set forth herein.

12.     Paragraph 3.5.3 of the Educational Products and Services Agreement entered with the School District on June 16, 2020 ("Agreement" or "Contract") provided that Defendant "will comply with all applicable licensure and other requirements of the State and any regulations promulgated thereunder."

13.     All academic performance and staffing requirements for Stride, including but not limited to teacher-to-student ratios are mandated and required by State law, which is a statutory and regulatory requirement of the State and which required the conformity of Stride with the law.

14.     Paragraph 9.2 of the Agreement with the School District provided that Defendant Stride is solely responsible to employ and supervise its employees, and it mandates that its teachers and support staff "possess the necessary credentials, qualifications, background and conduct checks required by Applicable Law."

15.     At no time did the School District assume any responsibility belonging to Defendant Stride to screen or process Defendant's employees or assist with the same.

16.     Paragraph 9.6 of the Agreement with the School District provided that Defendant Stride would arrange and pay for all background checks of its applicants and employees, and it

3

**EXHIBIT A**

mandated that, upon demand, Defendant Stride "will provide the School District with documentary evidence of its compliance, including review of the results of said background checks . . . .".

17.    At no time did the School District assume any responsibility belonging to Defendant to process the background checks of Defendant's employees.

18.    There has been copious communication with Defendant Stride's Staff throughout the contract period related to notice, concerns and demands made by the School District to have Defendant Stride comply with requirements of the law.

19.    Despite two consecutive years of underperformance compared to similarly situated schools within the School District, Defendant Stride failed to provide the required academic remediation plan as outlined in Section 3.5.6 of its Agreement with the School District.

20.    Given Defendant Stride's access to student data since 2021, Defendants knew or should have known about the their failure and their requirement to provide the School District with a remediation plan on or before December 31, 2024.

21.    Defendants knew or should have known they were violating the applicable law and local policies, also with which Defendant Stride was required to comply, in exceeding the required teacher-to-student ratios specified under N.M. Stat. Ann. § 22-10A-20 (2003) as well as the Board of Education's Policy I-4550/IIB in exceeding the allowable thresholds of Defendant Stride's teachers, contrary to Paragraphs 1.2 and 3.5.1 of the Agreement with the School District as follows:

Section 22-10A-20(A) -

| | | |
|---|---|---|
| 1. | Duran, Libby | 25 |
| 2. | Finlay, Magnolia | 23 |
| 3. | Gibbons, Cherrea | 23 |
| 4. | Hatley, Klanese | 24 |
| 5. | Hunter, Joanna | 22 |

4

**EXHIBIT A**

| | | |
|---|---|---|
| 6. | Jumper, Ashley | 22 |
| 7. | Madoni, Brenda | 24 |

Section 22-10A-20(B) –

| | | |
|---|---|---|
| 1. | Grades 1-3 Average | 23.04 |

Section 22-10A-20(C) –

| | | |
|---|---|---|
| 1. | Grades 4-5 Average | 33.00 |

Section 22-10A-20(D) –

| | | |
|---|---|---|
| 1. | Angell, Ryan | 226 |
| 2. | Bartley, Elizabeth | 188 |
| 3. | Benson, Nathaniel | 174 |
| 4. | Britt, Julie | 207 |
| 5. | Canary, Robert | 225 |
| 6. | Coleman, Jessica | 205 |
| 7. | Cook, Chas | 189 |
| 8. | Davis, Tanya | 178 |
| 9. | Dukes, Lance | 224 |
| 10. | Felder, Jessica | 220 |
| 11. | Gifford, Bonnie | 167 |
| 12. | Greene-Wall, Mary | 182 |
| 13. | Hohenthaner, Crystal | 185 |
| 14. | Jaramillo, Gabriel | 218 |
| 15. | Kast, Nancy | 174 |
| 16. | Loe, Lacey | 222 |
| 17. | Martinez, Oclides | 164 |
| 18. | Preciado, Megan | 176 |
| 19. | Vaughan, McKenzie | 182 |

**EXHIBIT A**

| | | |
|---|---|---|
| 20. | Cook, Chas - ELA | 189 |
| 21. | Bartly, Elizabeth - ELA | 188 |
| 22. | Britt, Julie - ELA | 207 |
| 23. | Greene-Wall, Mary - ELA | 182 |
| 24. | Hohenthaner, Crystal | 185 |
| 25. | Vaughn, McKenzie | 182 |
| 26. | Bartley, Elizabeth, D-ENG-06BE3-KN-60162-M3 | 40 |
| 27. | Bartley, Elizabeth, D-ENG-06BE3-KN-60162-M4 | 47 |
| 28. | Bartley, Elizabeth, D-ENG-07BE3-KN-60162-M2 | 48 |
| 29. | Bartley, Elizabeth, D-ENG-07BE3-KN-60162-M5 | 53 |
| 30. | Britt, Julie, D-ENG-07BE3-KN-57159-M2 | 51 |
| 31. | Britt, Julie, D-ENG-07BE3-KN-57159-M3 | 56 |
| 32. | Britt, Julie, D-ENG-07BE3-KN-57159-M4 | 53 |
| 33. | Britt, Julie, D-ENG-07BE3-KN-57159-M5 | 47 |
| 34. | Cook, Chas, D-ENG-06BE3-KN-57234-M2 | 51 |
| 35. | Cook, Chas, D-ENG-06BE3-KN-57234-M3 | 44 |
| 36. | Cook, Chas, D-ENG-06BE3-KN-57234-M4 | 48 |
| 37. | Cook, Chas, D-ENG-06BE3-KN-57234-M5 | 46 |
| 38. | Greene-Wall, Mary, D-ENG-07BE3-KN-60739-M3 | 46 |
| 39. | Greene-Wall, Mary, D-ENG-08BE3-KN-60739-M2 | 49 |
| 40. | Greene-Wall, Mary, D-ENG-08BE3-KN-60739-M4 | 43 |
| 41. | Greene-Wall, Mary, D-ENG-08BE3-KN-60739-M5 | 44 |
| 42. | Hohenthaner, Crystal, D-ENG-08BE3-KN-58958-M2 | 46 |
| 43. | Hohenthaner, Crystal, D-ENG-08BE3-KN-58958-M3 | 58 |
| 44. | Hohenthaner, Crystal, D-ENG-08BE3-KN-58958-M4 | 39 |
| 45. | Hohenthaner, Crystal, D-ENG-08BE3-KN-58958-M5 | 42 |
| 46. | Vaughan, McKenzie, D-ENG-08BE3-KN-59587-M2 | 46 |
| 47. | Vaughan, McKenzie, D-ENG-08BE3-KN-59587-M3 | 62 |
| 48. | Vaughan, McKenzie, D-ENG-08BE3-KN-59587-M4 | 33 |

6

**EXHIBIT A**

| | | |
|---|---|---|
| 49. | Vaughan, McKenzie, D-ENG-08BE3-KN-59587-M5 | 41 |
| 50. | Alfiky, Sophia | 216 |
| 51. | Bhattacharyya, Aunup | 198 |
| 52. | Booth, Lynne | 170 |
| 53. | Border, Julia | 182 |
| 54. | Chiri, Stacy | 175 |
| 55. | Davis, Mark | 193 |
| 56. | Doak, Kaylin | 181 |
| 57. | Giovannini, Sandra | 210 |
| 58. | Holderfield, Tamara | 197 |
| 59. | Johnson, Timothy | 190 |
| 60. | Justice, Leigh | 204 |
| 61. | Kleczka, Jenny | 174 |
| 62. | Knable, Alicia | 169 |
| 63. | Maldonado, Shelley | 162 |
| 64. | Mendoza, Ismael | 184 |
| 65. | Nelson, Caroline | 178 |
| 66. | Powell, Justine | 170 |
| 67. | Ragland, Randall | 177 |
| 68. | Stanzione, Carolyn | 197 |
| 69. | Tomlinson, Rebecca | 202 |
| 70. | Wall, Jonathan | 165 |
| 71. | Whitt, Alice | 163 |
| 72. | Williams, Kaila | 182 |
| 73. | Williams, Sabrina | 209 |
| 74. | Williams, Zachary | 186 |
| 75. | Border, Julia - ELA | 182 |
| 76. | Chiri, Stacy - ELA | 175 |
| 77. | Kleczka, Jenny - ELA | 174 |

7

**EXHIBIT A**

| | | |
|---|---|---|
| 78. | Knable, Alicia - ELA | 169 |
| 79. | Maldonado, Shelley - ELA | 162 |
| 80. | Powell, Justine - ELA | 170 |
| 81. | Wall, Jonathan - ELA | 165 |
| 82. | Border, Julia, D-ENG-108BE2-KN-57544-HS1 | 38 |
| 83. | Border, Julia, D-ENG-108BE2-KN-57544-HS2 | 39 |
| 84. | Border, Julia, D-ENG-108BE2-KN-57544-HS4 | 41 |
| 85. | Border, Julia, D-ENG-108BE2-KN-57544-HS6 | 64 |
| 86. | Wall, Jonathan, D-ENG-108BE2-KN-60738-HS2 | 38 |
| 87. | Wall, Jonathan, D-ENG-108BE2-KN-60738-HS3 | 33 |
| 88. | Wall, Jonathan, D-ENG-108BE2-KN-60738-HS4 | 41 |
| 89. | Wall, Jonathan, D-ENG-108BE2-KN-60738-HS5 | 53 |
| 90. | Dillard-Mandigo, Joni, D-ENG-208BE2-KN-57593-HS5 | 38 |
| 91. | Dillard-Mandigo, Joni, D-ENG-208BE2-KN-57593-HS6 | 42 |
| 92. | Dillard-Mandigo, Joni, D-ENG-208BE2-KN-57593-HS7 | 49 |
| 93. | Knable, Alicia, D-ENG-208BE2-KN-59039-HS1 | 42 |
| 94. | Knable, Alicia, D-ENG-208BE2-KN-59039-HS3 | 47 |
| 95. | Knable, Alicia, D-ENG-208BE2-KN-59039-HS4 | 45 |
| 96. | Knable, Alicia, D-ENG-208BE2-KN-59039-HS6 | 35 |
| 97. | Powell, Justine, D-ENG-208BE2-KN-62392-HS1 | 38 |
| 98. | Powell, Justine, D-ENG-208BE2-KN-62392-HS2 | 59 |
| 99. | Powell, Justine, D-ENG-208BE2-KN-62392-HS5 | 43 |
| 100. | Chiri, Stacy, D-ENG-303BE3-KN-57782-HS2 | 70 |
| 101. | Chiri, Stacy, D-ENG-303BE3-KN-57782-HS4 | 55 |
| 102. | Kleczka, Jenny, D-ENG-303BE3-KN-61817-HS1 | 63 |
| 103. | Kleczka, Jenny, D-ENG-303BE3-KN-61817-HS7 | 55 |
| 104. | Maldonado, Shelley, D-ENG-403BV2-K-60619-HS1 | 44 |
| 105. | Maldonado, Shelley, D-ENG-403BV2-K-60619-HS2 | 33 |
| 106. | Maldonado, Shelley, D-ENG-403BV2-K-60619-HS3 | 40 |

**EXHIBIT A**

107.  Maldonado, Shelley, D-ENG-403BV2-K-60619-HS6          44

108.  Kleczka, Jenny, D-ENG-403BV2-K-61817-HS5          34

22.    Defendant's corporate leadership was placed on notice as far back as nearly two (2) years prior on or about September 30, 2023 that it was not in compliance with the student-to-teacher ratios, and only under the notice of termination had Defendant made any effort to resolve its breach of the Agreement and, in the end, it failed to remedy this its breaches within the 45-days provided before the Board of Education formally terminated the Agreement.

23.    Defendant's corporate leadership knew or should have known that its counselor-to-student ratios were approximately 1,366 students-to-one counselor, depriving students of sufficient services and guidance in violation of the Agreement with the School District, yet they intentionally violated counselor-to-student ratios so as to maximize profits at the expense of students being serviced by Defendant Stride, Inc.

24.    The American School Counselor Association recommends a ratio of 250-to-one as a professional standard of sufficient educational services.  The resulting lack of services by Stride, Inc. to the School District is reflected in inadequate educational services to students and deficient reporting compliance by the Defendant to the School District.

25.    Defendant Stride failed to remedy this material breach of the in the 45-days provided before the Board of Education formally terminated the Agreement.

26.    The student turnover rate for the 2024-2025 school year for Defendant was 29.82%. Defendant's deficiencies in the following areas led to the turnover rate of students:  program of instruction, resources provided, student and parent communication, teachers, counselors, computers and access, etc. which led to an excessive number of students who did not remain with

**EXHIBIT A**

the program, and Defendant Stride failed to remedy this material breach in the 45-days provided before the Board of Education formally terminated the Agreement.

27.    Defendant Stride's graduation rate demonstrated deficiency by Stride as a result of its profiteering at the expense of students in the following areas: program of instruction, resources provided, student and parent communication, teachers, counselors, computers and access, etc…that was also lacking in substance and supervision leading to a horrific graduation rate for the 2023-2024 school year compared to the years -

    a.  **2024**        **27.67%**
    b.  **2023**        **54.29%**
    c.  **2022**        **55.79%**
    d.  **2021**        **47.88%**

Defendant Stride was repeatedly notified that the graduation rate for the Stride-provided program had to improve, and it failed to remedy these deficiencies or provide a remedial plan to the School District as required under Section 3.5.6 of the Agreement with the School District for two (2) consecutive school years of declining student performance.

28.    Defendant Stride also violated State law which required that each student spend at least 50% of instructional time directly with a teacher present and connected to that student for instruction.

29.    Defendant Stride failed to and refused to provide student data upon demand to the School District to assess its compliance with the law during both the contract and remedy period.

30.    Defendant Stride acted intentionally and knowingly to increase profits by reducing teacher and staff levels and failing to employ specialized staff, and it failed to appropriately identify students for special education services.

10

**EXHIBIT A**

31.     The result of Defendant Stride's acts and omissions was to cause significant harm to the School District's ability to identify and address student needs for services at level 3 and level 4 as required by Federal and State law.

32.     More importantly, as of the 120th day of reporting for the 2024-2025 school year, Defendant Stride had 11 teachers over their permitted caseload for SPED students, and Defendant Stride failed to remedy this material breach in the 45-days provided before the Board of Education formally terminated the Agreement.

33.     For the 2024-2025 school year, Defendant Stride had 40 annual IEPs for students that were late and has additional 44 late IQ Evaluations for students enrolled with Stride.

34.     During the 2023-2024 school year, the School District's SPED Director communicated with Defendant Stride to ensure that Stride was actually doing IEP meetings for transfer students within 30-days of enrollment in the Stride-operated program.

35.     While Defendant Stride indicated it would do the IEP meetings utilizing the School District's process for special education students, it failed to do so.  As a result, students were not getting appropriate services and some students were taking the wrong State-mandated test for Spring of 2025 and potentially were taught the incorrect curriculum.

36.     Additionally, Defendant Stride failed to give the School District timely notification of changes in services for students, which caused inappropriate testing issues for students, and Defendant Stride failed to remedy this material breach in the 45-days provided before the Board of Education formally terminated the Agreement.

37.     Defendant Stride's failures in the provision of special education services is contrary to State and Federal law to which Defendant Stride knew or should have known of the requirements under the applicable law.

11

**EXHIBIT A**

38.    In one instance, a student with a significant exceptionality was wholly unable to participate in virtual instruction yet Defendant Stride kept the student enrolled when the appropriate services for the student was in-person homebound services.

39.    Defendant Stride's actions and omissions in this matter are reprehensible and clearly contrary to the interests of the students in the name profiteering, and it failed to remedy this material breach in the 45-days provided before the Board of Education formally terminated the Agreement. The levels of exceptionality for special education students at a Stride-operated school as compared to the School District are as follows:

|  | Level 1 | Level 2 | Level 3 | Level 4 |
|---|---|---|---|---|
| K12 | 52.23% | 43.30% | 2.4% | 2.1% |
| GMCS | 31.71% | 47.94% | 6.8% | 13.5% |

40.    As of April 1, 2025, Defendant Stride had 66 of its teachers who were exclusively employed by Stride, Inc. that were are not sufficiently licensed to teach in New Mexico.

41.    The duty of providing qualified teachers is solely upon Defendant Stride to meet under the Agreement between the Parties, and it failed to remedy this material breach in the 45-days provided before the Board of Education formally terminated the Agreement.

42.    During the cure period beginning on April 1, 2025, Stride submitted the names of 46 individuals indicating they would be hired by Stride to teach. However, only 19 of these individuals had fully completed both the School District's and the PED's required background checks.

43.    Prior to having any contact with students, State law and the School District's policies require that all teachers, volunteers, and contracted staff have an approved employee background check via the New Mexico Department of Public Safety vendor IDEMIA™.

**EXHIBIT A**

44.     The School Personnel Act at Section 22-10A-5 also requires all applicants for licensure with the PED to have an approved background check on file with the PED prior to having unsupervised access to students.

45.     Per State legislation contained within House Bill 128, a HB128 form must also be completed for anyone that will have unsupervised access to students.

46.     Defendant failed to and, indeed, refused to provide to the School District any of the required HB128 information, forms, or documentation for any applicant or employee in Stride's program in violation of State Law and the Agreement with the School District, and Defendant Stride failed to remedy this material breach in the 45-days provided before the Board of Education formally terminated the Agreement.

47.     The student proficiency rates of Defendant Stride were substantively substandard for any substantive program of instruction within the School District, and its numbers declined each school year as follows –

      a.    **Math Proficiency** – For the 2022-2023 school year K12 was 12.9 percentage points lower than in-person students and 17.6 percentage points lower than the State proficiency rate, and for the 2023-2024 school year K12 was 12.4 percentage points lower than in-person students and 17.5 percentage points lower than the State proficiency rate, demonstrating no progress by K12;

      b.    **Reading Proficiency** – For the 2022-2023 school year K12 was 1.2 percentage points lower than in-person students and 11 percentage points lower than the State proficiency rate, and for the 2023-2024 school year K12 was 7.4 percentage points lower than in-person students and 16.3 percentage points lower than the State proficiency rate, demonstrating no progress by K12; and

      c.    **Science Proficiency** – For the 2022-2023 school year K12 was 10.8 percentage points lower than in-person students and 17.7 percentage points lower than the State proficiency rate, and for the 2023-2024 school year K12 was 11.3 percentage points lower than in-person students and 20.1 percentage points lower than the State proficiency rate, demonstrating no progress by K12.

13

**EXHIBIT A**

48.     Stride failed to develop any remediation plan nor sought School District input from for substandard proficiency by students at the stride-operated school following more than two consecutive years of bad performance under the Agreement contrary to Paragraph 3.4.6 of the Agreement.

49.     Defendant Stride's teachers had only completed 83.2% of all required occupational and professional trainings required under State law, and Defendant failed to remedy this material breach in the 45-days provided before the Board of Education formally terminated the Agreement.

50.     Defendant Stride failed to timely and sufficiently resolve technology issues with its assigned students to ensure that the student has access to the instruction being provided by Stride.

51.     Defendant Stride also violated State law with regard to failing to timely provide students with computers and equipment necessary for Internet access such that students were deprived of a public education for inordinate periods of time.

52.     Defendant Stride also violated State law and Board of Education Policy by failing to enter grades each week for each student within seven (7) calendar days.  Defendant Stride knew or should have known that two (2) grades per week was required for each student.

53.     Defendant Stride used teachers from other states to meet its instruction requirements in violation of State law without the knowledge of the School District despite knowing that such teachers were not licensed in New Mexico to teach students.

54.     Defendant Stride failed to complete some or all of the required trainings for its teachers and staff as set forth by PED regulations and School District policies and practices, and it failed to conduct training on the applicable curriculum and instruction or on the local policies and legal requirements on providing instruction and staffing of a school program under State law and Board of Education Policies.

**EXHIBIT A**

55.    On December 17, 2024, and on December 24, 2024, Defendant Stride submitted withdrawal reports for students who have been inactive for extended periods of the school year, including one student who is listed as withdrawn from Stride on September 3, 2024, but who was not included in a withdrawal report from Stride until December 24, 2024.

56.    Defendant Stride retained nonexistent students on its rolls to exploit the School District of public monies for educating ghost students.

57.    Twenty one students withdrew from Defendant Stride's program long before being included in a withdrawal report that Stride submitted to the School District.

58.    Defendant Stride's December 2024 withdrawal criteria, as seen in the Next Placement column of the below table, included "Absences for 10 consecutive days" and "Student Never Started with [Stride]", constituting ghost students enrolled at Stride.

| STRIDE STUDENT ID | GRADE | WITHDRAW DATE | EXIT CODE | NEXT PLACEMENT |
|---|---|---|---|---|
| 5488396 | 12th Grade | 11/21/2024 | W2 | Absent for 10 consecutive days |
| 6033255 | 9th Grade | 11/18/2024 | W1 | Tohatchi High School |
| 6051393 | 11th Grade | 10/30/2024 | W1 | Student Never Started with K12 |
| 5986146 | 9th Grade | 11/21/2024 | | Not Provided |
| 6042734 | 11th Grade | 10/13/2024 | W2 | Absent for 10 consecutive days |
| 5010468 | 10th Grade | 11/20/2024 | W2 | Absent for 10 consecutive days |
| 5959931 | 11th Grade | 11/1/2024 | W1 | Student Never Started with K12 |
| 6068214 | 11th Grade | 11/16/2024 | W2 | Absent for 10 consecutive days |
| 6072819 | 12th Grade | 11/21/2024 | W1 | Student Never Started with K12 |

**EXHIBIT A**

| STRIDE STUDENT ID | GRADE | WITHDRAW DATE | EXIT CODE | NEXT PLACEMENT |
|---|---|---|---|---|
| 5003505 | 7th Grade | 11/18/2024 | W2 | Absent for 10 consecutive days |
| 6062452 | 2nd Grade | 12/2/2024 | | Not Provided |
| 2088897 | 7th Grade | 11/14/2024 | W2 | Absent for 10 consecutive days |
| 6087146 | 10th Grade | 10/26/2024 | W4 | CNM GED Program |
| 5795829 | 11th Grade | 10/10/2024 | W2 | Absent for 10 consecutive days |
| 4572599 | 9th Grade | 10/28/2024 | W2 | Absent for 10 consecutive days |
| 6035778 | 11th Grade | 11/8/2024 | W1 | Las Montanas Charter High School |
| 5968888 | 11th Grade | 11/8/2024 | W2 | Absent for 10 consecutive days |
| 5955139 | 7th Grade | 11/26/2024 | W10 | Moved out of state |
| 6003519 | 11th Grade | 9/3/2024 | W1 | Student Never Started with K12 |
| 6023708 | 5th Grade | 12/2/2024 | W2 | Absent for 10 consecutive days |
| 6098256 | 10th Grade | 11/21/2024 | W4 | CNM GED Program |

59.    The School District was not made aware of student withdrawal dates until the students appeared on the belated reports that were submitted by Stride long after these students should have been removed from the enrollment rolls of Stride.

60.    This delay by Defendant Stride resulted in non-compliant inclusion of these students the 80-Day reporting window and, for one student, in the 40-Day reporting window starting October 9, 2024.

61.    Despite multi-year efforts by the School District to work with Defendant Stride on improving their timeliness of reporting of the withdrawal of students, Defendant Stride instead

EXHIBIT A

exploited the information about mandatory reporting periods to maximize profits its by inflating its enrollment with ghost students.

62.    Defendant Stride failed to consistently provide timely updates regarding student withdrawals, new enrollments, scheduling information, or required documentation such as guardianship papers and age verification forms in order to maximize its profits by inflating its enrollment with ghost students.

63.    These intentional or negligent delays adversely affected the School District's ability to meet State reporting requirements and disrupted established workflows, as the School District was compelled to rely on Defendant Stride's reporting for its reporting to the PED.

64.    Defendant Stride knew or should have known that it was failing to provide notice to the School District of students absent for 10 or more school days to address truancy issues as required by statute.

65.    Defendant Stride failed to provide training data upon demand to the School District to assess its compliance with the law and the Agreement between the parties.

66.    Defendant Stride utilized a "flex" form of instruction of its students, who may or may not have been subject to asynchronous learning, in that State law required a teacher be present and providing instruction for each student at least 50% time.

67.    Defendant Stride had students be self-taught in that they only associated passively with a teacher without active instruction, contrary to State law.

68.    Defendants' intentional actions and omissions of cutting and failing to hire teachers and support staff such as counselors minimized Defendant Stride's overhead costs in order to maximize its profits despite these actions being contrary to State laws and regulations as well as to local policies and the Agreement with the School District.

17

**EXHIBIT A**

69.     Defendants' intentional actions and omissions of hiring unqualified and untrained teachers minimized Defendant Stride's overhead costs in order to maximize its profits despite these actions being contrary to State laws and regulations as well as to local policies and the Agreement with the School District.

70.     Defendants' intentional actions and omissions of reporting false, incomplete and inaccurate student data to make it appear that more students than were actually in attendance at Stride's program maximized Defendant Stride's profits despite these actions being contrary to State laws and regulations as well as to local policies and the Agreement with the School District and despite their doing so being a crime.

71.     On May 2, 2025, a management representative of Stride with local authority for the operation of the Stride virtual education program for the School District, and one who had the ability to bind the Defendant, lodged a whistleblower complaint against his employer with the New Mexico Public Education Department.

72.     The Whistleblower informed the General Counsel of the PED that "I believe my employer has committed one or more violations of state statute 22-10A-20, which directly affects lawful use of public education funds and/or delivery of educational services to students."

73.     The Whistleblower also indicated that "I have observed and have been made aware of the intentional increases in student/teacher ratios in order to increase profit margins."

74.     The Whistleblower further stated that "I believe this conduct violates state statute 22-10A-20 and potentially defrauds public taxpayers or deprives students of services they are legally entitled to receive."

75.     In support of that allegation, the Whistleblower reported that he was part of and personally witnessed to two (2) Zoom™ calls, advising that the first was on or about October 15,

**EXHIBIT A**

2024, and the Vice President of Finance, Ryan Stutler, Portfolio Vice President, Sheila Sheibler, Regional Finance Manager, Conrad Michka, FP & A Director, Mike Ronquillo was on that call.

76.    The Whistleblower averred that he informed the Vice President of Finance that Stride was out of compliance with State law related to student-to-teacher ratios.

77.    The management representatives of Stride were also informed during that call that the School District's Superintendent of Schools and the Portfolio Vice President informed Stride two (2) years ago for the 2022-2023 school year, that Stride was out of compliance with State law.

78.    The Whistleblower reported to the Vice President of Finance for Stride that Defendant Stride currently had many teachers in the program over the State-mandated student-to-teacher ratios.

79.    The Whistleblower confirmed that the Vice President of Finance was well aware of the failure of Defendant Stride to comply with State law.

80.    The Whistleblower told his superior management officials within Stride that Defendant needed to immediately fill a sufficient number of teaching positions that the Whistleblower had requested to be approved in order to be in compliance with the State law as Stride had then "around 30 teachers over ratio/out of compliance with the statute" for maximum student-to-teacher ratios.

81.    The Whistleblower reported that the he had been asking "since July" of 2024, with e-mail documentation starting September 30, 2023 on the issue of noncompliance.

82.    The Whistleblower further states that he told the Vice President of Finance with Stride that the noncompliance with State law needed to be corrected immediately so that Defendant would have the sufficient "teachers hired and working" by the 80-day count and reporting to the School District for reporting to the PED in order to be in compliance.

**EXHIBIT A**

83.    The Whistleblower reported that the Vice President of Finance would not approve the needed positions to allow the Whistleblower to hire an adequate number of teachers and staffing for the program by the 80th-day in order to be in compliance with State law.

84.    The Whistleblower reported that on the 80th-day of reporting that Defendant Stride then "had approximately 50 teachers out of compliance" with State law.

85.    The Whistleblower reported that as of March of 2025, Defendant Stride was "out of compliance with [the New Mexico] statue by 80 teachers."

86.    The Whistleblower reported that the continuous increase of teachers being out of compliance with State law was directly attributed by the denial of approval by the Vice President of Finance "to post positions to meet state statute 22-10A-20."

87.    The Whistleblower indicated that the Vice President of Finance was the dedicated "approver of job requisition positions" and was the sole authority for the Whistleblower to post and hire for positions to meet State statutory compliance.

88.    The Whistleblower complaint then details that the second Zoom™ call occurred on or around March 4, 2025.

89.    The Whistleblower reported that the purpose of the call was to go over his "projected profit margin for the 25-26 school year."

90.    The Whistleblower reported that Stride's management indicated that the Whistleblower's "projected [profit] margin was too low according to the Vice President of Finance, Ryan Stutler, who is over all our schools nationwide financially."

91.    The Whistleblower stated to his superiors that the then current "student/teacher ratios had [Stride] at 82 teachers being out of compliance" with State law. This was reported as

**EXHIBIT A**

the number being "worse than at the 40-day count(over ratios/compliance)" with statutorily-mandated student-to-teacher ratios.

92.     The Whistleblower again placed Stride's management on notice that teachers needed to be immediately hired and that the Whistleblower had been requesting the authority to hire teachers since July of 2024, with e-mail documentation since September 30, 2023 about the issue of noncompliance.

93.     The Whistleblower reported that the Vice President of Finance instead told the Whistleblower that the Whistleblower had to actually "cut staff [fire or RIF] for the next [school] year to meet [the] projected profit margin."

94.     The Whistleblower reported that also on the second call with him were the Regional Finance Manager, Conrad Michka, FP & A Director, Mike Ronquillo, Portfolio Vice President, Sheila Sheibler.

95.     The Whistleblower reported that at this meeting, Stride's management discussed the fact that, on February 3, 2025, the Whistleblower "had met with the GMCS Deputy Superintendent Jvanna Hanks and Data Analyst Kyle Wood and they shared [that Stride] had 82 teachers over ratio."

96.     The Whistleblower reported to the PED that the Whistleblower had e-mails and other communications with the finance department of Defendant Stride, and Stride was notified by the Whistleblower of the being out of compliance with State law.

97.     According to the Whistleblower complaint to PED, the Whistleblower's immediate supervisor, Sheila Sheibler, Stride's Portfolio Vice President, currently possesses "detailed documentation of her meetings with Vice President of Finance, Ryan Stutler, of his refusal to hire teachers" at the program in the School District despite knowledge of Stride violating State law.

**EXHIBIT A**

98.     The Whistleblower further reports in his complaint to the PED that the Whistleblower was present on a Zoom™ call on April 3, 2025 with the following individuals in attendance: Donna Blackman, the Chief Financial Officer, John Grothaus, Stride's Legal Counsel, Janice Grunberg the Executive Vice President of K12 Operations, James Rhyu, the CEO and Board Chair, Ryan Stutler, the Vice President of Finance, Sand[r]a Ha, of Finance, Adam Hawf, the Superintendent of Schools for Stride and Greer McMullen, the General Counsel and Secretary.

99.     The Whistleblower stated that on that call, Defendant James Rhyu, CEO of Stride, Inc., "stated no one was going to get fired for this and that the company did go too far from a financial standpoint related to teachers not being hired" to meet its obligations in the Agreement with the School District.

100.    The Whistleblower next stated he was on another Zoom™ call on April 8, 2025, with Bryan Flood, the Senior Vice President and Chief Public Affairs Officer, Randall Greenway, of Stride's School Development, John Grothaus, Stride's legal counsel, Janice Gruneberg, Defendant Adam Hawf, Greer McMullen, Defendant James Rhyu, Defendant Ryan Stutler, Donna Blackman, Sandra Ha and Defendant Peter Stewart Stride's Senior Vice President of School Development.

101.    The Whistleblower stated that at the April 8th meeting, Bryan Flood indicated that Defendant "Stride Inc had a similar problem in Kentucky, although this was worse in New Mexico because [Stride] violated state statute because class loads/course loads are plainly spelled out in New Mexico state statute."

102.    The Whistleblower provided that Defendant "Peter Stewart said the company should attack first publicly and Stride Inc. should develop a strategy for that" and that Defendant

**EXHIBIT A**

"James Rhyu said [to the group] that the Superintendent [for the School District] was in over his skis on this issue."

103.    It is clear from this statement that the School District's Superintendent, Mike Hyatt, was the target of the disinformation and false narrative hatched in a civil conspiracy to harm Superintendent Hyatt and the School District.

104.    Stride's management, including the individual Defendants, engaged in and agreed to a civil conspiracy to cover up its misconduct and illegal activities acting, by and through its employees, agents and attorneys, in planning and engaging in a systemic public attack on the School District and its Superintendent of Schools to distract from its illegal activities and its breach of the contract with the Board of Education.

105.    Defendants acted to publicly to attack and to file other legal actions against the School District, including involuntary arbitration under the premise of the false narrative and a distraction campaign of false allegations advanced by Defendants despite knowing the falsity of its various pleadings and submissions and of the suspect nature of the claims being asserted against the School District.

106.    Defendant Stride's actions and omissions violation of the Agreement between Stride, the individual Defendants and Stride's employees, agents and attorneys' attacks on the School District and its Superintendent were and are intended to cause vexation, slander and defame the reputation and name of the Superintendent of Schools, slander and defame the reputation and name of the School District, inflate the costs of terminating Defendant's contract and to further defraud the School District in leveraging an unsupported and unfair settlement or to seek damages by pursuing knowingly false claims and alleging additional falsehoods in support of those claims.

**EXHIBIT A**

107.    As part of the libel and disinformation campaign, the outside attorneys[1] for Stride were authorized and filed an informal complaint against the School District's Superintendent with the New Mexico Ethics Commission alleging that Stride did not do anything wrong in its business practices and that it was the victim of retaliation by a vindictive public official abusing his authority, adversely affecting Superintendent Hyatt's liberty interests in his reputation and his employment.

108.    Defendant Stride's outside attorneys knew or should have known of the falsity of the allegations contained in their correspondence, communications and pleadings.

109.    Defendant Stride condoned the New Mexico Ethics Commission complaint despite knowing that Stride had knowingly been violating State law and local policies for years in order to maximize profits at the expense of the students they were contracted to educate.

110.    Defendant Stride, by and through a public relations firm acting as its agents, facilitated and cooperated with media reports that resulted in media reports based on the false premise advanced by Defendant Stride that Defendant Stride did not do anything wrong in its business practices and that it was the victim of retaliation by a vindictive public official abusing his authority.

111.    The knowingly false narrative provided to the media by Defendant Stride's employees and agents, attorneys and/or representatives resulted in a PED licensure complaint against the School District's Superintendent, adversely affecting his liberty interests in his reputation and his employment.

---

[1]  Should evidence reveal in discovery that outside counsel for Defendant Stride knew or should have known of the disinformation campaign against Plaintiff Hyatt and/or the School District and the falsehoods that form the basis of the actions of Defendants to attack Plaintiffs, Plaintiffs reserve the right to add the law firm as an additional party to the claims asserted herein.

**EXHIBIT A**

112.     The use of knowingly false accusations and the conspiracy engaged in between the management representatives to plan and initiate a public attack upon the School District and its Superintendent establishes malice on the part of Defendants.

113.     The disinformation campaign included direct communications by e-mail and other communications utilizing the School District's contact information for parents and guardians for students enrolled in the School District's program of virtual instruction.

114.     Defendants' disinformation campaign including disparaging comments and false accusations against the School District and Superintendent Hyatt were done to enable Defendant Stride to retain the students as a source of revenue despite its failing to meet the standards of public education set forth in statute, regulation and local policies.

115.     In a recorded Zoom Call on April 14, 2025, with Superintendent Hyatt, Defendant Adam Hawf admitted that Defendant Stride had, in deed, breached the Agreement between Stride and the Board of Education as to their teacher-to-student ratios being contrary to law.

116.     Defendant Stride failed to provide legally mandated instruction by qualified staff and failed to comply with the laws and local policies on education.

117.     Defendant Stride's false statements and actions averring that it was in compliance with law in the past demonstrated an intent to commit fraud, constitutes bad faith, establishes defamation, slander, and an intentional refusal to honor Defendant's legal obligations in accordance with the signed Agreement and their submission in response to RFP number RFP-394-20MA, contrary to State law.

118.     The Procurement Code and its regulations do not permit the School District to allow a contractor to retract an offer or alter the scope of any competitively awarded contract in a manner that is disadvantageous to the School District after the award.

**EXHIBIT A**

119.    Defendant Stride attempted to alter the scope and duties related to the contract with the School District by defrauding and failing to comply with the law and local policies for the education of students of the School District.

120.    In accordance with Section 13-1-95.2 to the Procurement Code the School District's Chief Procurement Officer is the person with sole legal authority to make determinations and approve procurements pursuant to the Procurement Code.

## COUNT I
## FRAUD

121.    The Plaintiffs re-allege and incorporate by reference the foregoing Paragraphs 1 through 120 as if fully set forth herein.

122.    Defendant Stride knew or should have known of the requirement under the Agreement with the School District and under State law and regulations and also under local policy to provide a quality education to students equal or better than students receive attending in-person instruction and to not to profiteer off of students.

123.    Defendant Stride knew or should have known of the requirement under the Agreement and State law to hire the sufficient number of licensed and qualified teacher to meet all State and local requirements for instruction and student services.

124.    Defendant Stride knew or should have known of the requirements under the Agreement with the School District and State law and regulations as well as local policy to provide safety training, professional teacher training, all required student testing and the related requirement for sufficient record keeping and reporting to the School District thereof.

125.    Defendant Stride knew or should have known of the requirement under the Agreement with the School District and under State law and regulations to provide special

**EXHIBIT A**

education services and other student services in compliance with the Agreement and State law rather than intentionally maximize its own profits over student well-being.

126.    Defendant Stride knew or should have known of the requirement under the Agreement with the School District, the statutory provisions and the PED regulations to meet all required teacher-to-student ratios in classroom, teacher qualifications, licensure requirements and teacher training necessary to meet its obligations under the Agreement with the School District and under State law.

127.    Defendant Stride knew or should have known of the requirement under the Agreement with the School District and of State law and regulations to operate in an efficient manner and not seek more public funds than necessary under the Agreement or to manipulate costs, student reporting and supervision of the educational services to increase profits while allowing education standards to fall.

128.    Defendant Stride provided a written guarantee to the School District; by freely and voluntarily negotiating and executing the contract that it would comply with the contract and the incorporated State laws, regulations and local policies as a legal obligation and comply with the requirements of the original RFP.

129.    Defendant Stride purposely and willfully disregarded the contractual requirements and the statutory and regulatory requirements in order to defraud the School District to increase its profits through the use of knowingly false reporting and by an unauthorized reduction in overhead costs and expenses to the detriment of the education of students.

130.    Defendant Stride, while obligated to provide a certain quality of education to students, disregarded its legal obligations with the sole intent to profit on the education of students that it was supposed to educate, and that profit was obtained illegally through the intentional

**EXHIBIT A**

violations of State law, incomplete and false reporting of student data, withholding technical support and operating and manipulating student counts to include students who had been dropped, withdrawn or were excessively absent.

131.    Defendant Stride failed to provide legally mandated instruction by qualified staff and comply with local policies on education.

132.    Defendant Stride's representations to the School District in conducting its business practices were knowingly and purposely false, misleading, and disingenuous as to the quality of education provided to students while concealing its illegal, unethical and improper actions and omissions from the School District.

133.    Defendant Stride acted intentionally and knowingly when it failed to hire, train, qualify, retain direct and supervise its management and teachers to provide the required quantity and quality of education for its students as required under State law, regulations and local policy and the Agreement with the School District.

134.    Defendants' intentional actions and omissions to minimize Defendant Stride's overhead costs by cutting and failing to hire teachers and support staff such as counselors to maximize its profits despite these actions being contrary to State laws, regulations, local policies and the Agreement with the School District.

135.    Defendants' intentional actions and omissions of failing to hire the number of teachers and staff necessary as well as the hiring unqualified and untrained teachers minimized Defendant Stride's overhead costs to maximize its profits despite these actions being contrary to State laws, regulations, local policies and the Agreement with the School District.

136.    Defendants' intentional actions and omissions of reporting false, incomplete and inaccurate student data to make it appear that more students than were actually in attendance at

**EXHIBIT A**

Stride's program to maximized Defendant Stride's profits despite these actions being contrary to State laws and regulations and contrary to local policies and the Agreement with the School District and despite also being a crime.

137.    Defendant Stride acted intentionally and knowingly when it failed to record and report student truancy and the lack of equipment and services being provided to students and also failed to remedy the same as required under State law and regulations and local policy.

138.    Defendant Stride acted intentionally and knowingly when it sought public monies from the School District based on its intentionally incomplete and false assertions that it was providing the educational and other services, including special education services to students as required under State law.

139.    Defendant misled and/or defrauded the School District in obtaining public monies while failing to meet its legal obligations.

140.    In doing so, Defendant Stride misled and/or defrauded the School District to increase its profits and obtain other financial benefits, including inflating its stock price on the open market by cutting teaching and staffing costs necessary to meet its legal obligations to provide sufficient education and services to students as set forth in State law.

141.    In the alternative, the falsity and/or incompleteness of the representations made by Defendant Stride was known to Defendants or the representations were recklessly made without regard for the truth or the rights of the School District.

142.    The representations were made to the School District by Defendant with the intent to deceive and to induce the School District to rely on those inaccurate, incomplete and false representations to obtain payment of public funds under false pretenses for services not rendered or not justified for Defendant in order to receive compensation.

**EXHIBIT A**

143.    The School District relied on the inaccurate, incomplete and false representations and omissions by Defendant Stride to compensate Defendant for virtual student education and instruction, unaware of the illegal and tortious actions and/or omissions by Defendants.

144.    Defendant Stride willfully engaged in fraud, unfair, deceptive and unconscionable trade practices.

145.    The direct and proximate cause of Defendant Stride's false, purposefully inaccurate and incomplete representations and omissions is that the School District has been damaged in an amount to be proven at trial, and the School District has had to engage legal counsel to recover unearned and illegal compensation generated by Defendants' actions and/or omissions and has incurred related costs and expenses as the direct result of Defendants' fraud.

146.    The exact amount of damages will be proven at the time of trial based on a necessary audit of monies received and based on Defendants' representations, actions and/or omissions in discovery by the School District and other evidence.

147.    The false representations made; actions taken and/or omissions by Defendants and relied upon by the School District were intentional, willful, grossly negligent and/or made in reckless disregard for the rights of the School District and its students, such that the School District is entitled to the award of punitive damages against Defendant Stride.


WHEREFORE, Plaintiff Board of Education for the Gallup-McKinley County Schools requests the entry of a judgment for the School District and against Defendant Stride by this Court to include:

A.    Compensatory damages in the amount to be established and proven at trial;

**EXHIBIT A**

B.      Punitive damages in an amount to be established at trial to deter Defendant Stride's conduct in the future from engaging in fraud;

C.      Attorney's fees, costs, and expenses in an amount to be established at trial, including pre-judgment and post judgment interest on any award; and,

D.      For such other and further relief as the Court deems just and proper.

## COUNT II
## UNFAIR TRADE PRACTICES

148.    The Plaintiffs re-allege and incorporate by reference the foregoing Paragraphs 1 through 147 as if fully set forth herein.

149.    Defendant Stride's conduct, actions and/or omissions to lower its overhead costs by cutting teachers and support staff, falsify and purposely submit incomplete and inaccurate student data and failing to honor its legal obligations under State law, regulation and local policy violates N.M. Stat. Ann. § 57-12-3 (1978) in the following ways:

a.      Defendant knew or should have known of the requirement under the Agreement with the School District and under State law and regulations and also under local policy to provide a quality education to students equal or better than students receive attending in-person instruction and to not to profiteer off of students.

b.      Defendant knew or should have known of the requirement under the Agreement and State law to hire the sufficient number of licensed and qualified teacher to meet all State and local requirements for instruction and student services.

31

**EXHIBIT A**

c.    Defendant knew or should have known of the requirement under the Agreement with the School District and State law and regulations and also local policy to provide safety training, professional teacher training, all required student testing and engage in sufficient record keeping and reporting to the School District.

d.    Defendant knew or should have known of the requirement under the Agreement with the School District and under State law and regulations to provide special education services and other student services rather than maximize profits over student well-being.

e.    Defendant knew or should have known of the requirement under the Agreement with the School District, the statutory provisions and the PED regulations to meet all required teacher-to-student ratios in classroom, teacher qualifications, licensure requirements, teacher training necessary to meet its obligations under the Agreement with the School District and its obligations under State law.

f.    Defendant knew or should have known of the requirement under the Agreement with the School District and of State law and regulations to operate in an efficient manner and not seek more public funds than necessary under the Agreement or to manipulate its costs, student reporting and supervision of the educational services to increase profits while allowing education standards to fall.

g.    Defendant provided a written guarantee to the School District; by freely and voluntarily negotiating and executing the Agreement that it would comply with

**EXHIBIT A**

the contract and the incorporated State laws, regulations and local policies as a legal obligation and comply with the requirements of the original RFP.

h.    Defendants' intentional actions and omissions to minimize Defendant Stride's overhead costs by cutting and failing to hire teachers and support staff such as counselors to maximize its profits despite these actions being contrary to State laws, regulations, local policies and the Agreement with the School District.

i.    Defendants' intentional actions and omissions of failing to hire the number of teachers and staff necessary as well as the hiring unqualified and untrained teachers minimized Defendant Stride's overhead costs to maximize its profits despite these actions being contrary to State laws, regulations, local policies and the Agreement with the School District.

j.    Defendants' intentional actions and omissions of reporting false, incomplete and inaccurate student data to make it appear that more students than were actually in attendance at Stride's program to maximize Defendant Stride's profits despite these actions being contrary to State laws and regulations and contrary to local policies and the Agreement with the School District and despite also being a crime.

k.    Defendant purposely and willfully disregarded the contractual requirements and the statutory and regulatory requirements in order to defraud the School District increase its profits through the use of knowingly false reporting and by unauthorized reduction in overhead costs and expenses to the detriment of the education of students.

33

**EXHIBIT A**

l.    Defendant Stride, while obligated to provide a certain quality of education to students, disregarded its legal obligations with the sole intent to profit on the education of students that it was supposed to educate, and that profit was obtained illegally through the intentional violations of State law, incomplete and false reporting of student data, withholding technical support and operating and manipulating student counts to include students who had been dropped, withdrawn or absent.

m.    Defendant Stride failed to provide legally mandated instruction by qualified staff and comply with local policies on education.

n.    Defendant Stride's representations to the School District in conducting its business practices were knowingly and purposely false, misleading, and disingenuous as to the quality of education provided to students while concealing its illegal, unethical and improper actions and omissions from the School District.

o.    Defendant Stride acted intentionally and knowingly when Defendant failed to hire, train, qualify, retain and direct and supervise its management and teachers to provide the required quantity and quality of education for its students as required under the State law and regulations and local policy.

p.    Defendant Stride acted intentionally and knowingly when it failed to record and report student truancy and the lack of equipment and services being provided to students and failed to remedy the same as required under State law and regulations and local policy.

34

**EXHIBIT A**

q.   Defendant Stride acted intentionally and knowingly when it sought public monies from the School District based on its intentionally incomplete and false assertions that it was providing the educational and other services, including special education services to students as required under State law.

r.   Defendant misled and/or defrauded the School District in obtaining public monies while failing to meet its legal obligations.

s.   In doing so, Defendant Stride misled and/or defrauded the School District to increase its profits and obtain other financial benefits, including inflating its stock price on the open market by cutting teaching and staffing costs necessary to meet its legal obligations to provide sufficient education and services to students as set forth in State law.

t.   In the alternative, the falsity and/or incompleteness of the representations made by Defendant Stride were known to Defendant Stride or the representations were recklessly made without regard for the truth.

u.   The representations were made to the School District by Defendants with the intent to deceive and to induce the School District to rely on those inaccurate, incomplete and false representations to obtain payment of public funds under false pretenses for services not rendered or not justified in order for Defendant Stride to receive compensation.

v.   The School District relied on the inaccurate, incomplete and the false representations and omissions by Defendant Stride to compensate Defendant for virtual student education and instruction, unaware of the illegal and tortious actions and/or omissions by Defendants.

35

**EXHIBIT A**

w.    Defendant Stride willfully engaged in fraud, unfair, deceptive and unconscionable trade practices.

x.    The false representations made; actions taken and/or omissions by Defendants and relied upon by the School District were intentional, willful, grossly negligent and/or made in reckless disregard for the rights of the School District and its students, such that the School District is entitled to the award of punitive damages against Defendant Stride.

150.    The School District is a first party beneficiary of the contract between the School District and Defendant Stride and is covered by N.M. Stat. Ann. § 57-12-10 (1978) for the relief which the School District now seeks.

151.    The School District has been damaged by the statutory violation of Defendant Stride, and in accordance with N.M. Stat. Ann. § 57-12-10 (1978), is entitled to attorneys' fees and three times actual damages and costs of litigation as established and proven at trial.

152.    Pursuant to N.M. Stat. Ann. § 57-12-10(D) (1978), the relief sought in this Count is in addition to remedies otherwise available to the School District against Defendant Stride as set forth in the other Counts, including the award of punitive damages.

WHEREFORE, Plaintiff Board of Education for the Gallup-McKinley County Schools requests the entry of a judgment for the School District and against Defendant Stride by this Court to include:

A.    Three times actual damages arising from Defendant Stride's deceptive trade practices in the amount to be established and proven at trial;

**EXHIBIT A**

B.      Attorney's fees, cost and litigation expenses in an amount to be established at trial, and pre-judgment and post judgment interest; and,

C.      For such other and further relief as the Court deems proper.

**COUNT III**

**CONSTRUCTIVE FRAUD**

153.    The Plaintiffs re-allege and incorporate by reference the foregoing Paragraphs 1 through 152 as if fully set forth herein.

154.    Each Defendant had a legal and equitable duty to comply with all State laws and regulations and with local policies in the performance of its provision of virtual instruction to students enrolled in the program as set forth above in Paragraphs 11 through 120.

155.    Each Defendant had a legal and equitable duty to not engaging in profiteering in the violation of State laws and regulations and in violation of local policies as set forth above in Paragraphs 11 through 120.

156.    Each Defendant had a legal and equitable duty to not put profits over students and ignored that requirement instead of providing each student a sufficient education.

157.    Each Defendant had a duty to provide legally mandated instruction by qualified staff and comply with local policies on education.

158.    Each Defendant breach those duties.

159.    Defendants' intentional actions and omissions of cutting and failing to hire teachers and support staff such as counselors minimized Defendant Stride's overhead costs and maximized its profits, despite these actions being contrary to State laws, regulations, local policies and the Agreement with the School District.

37

**EXHIBIT A**

160.    Defendants' intentional actions and omissions of failing to hire the number of teachers and staff necessary as well as the hiring unqualified and untrained teachers minimized Defendant Stride's overhead costs to maximize its profits despite these actions being contrary to State laws, regulations, local policies and the Agreement with the School District.

161.    Defendants' intentional actions and omissions of reporting false, incomplete and inaccurate student data to make it appear that more students than were actually in attendance at Stride's program to maximized Defendant Stride's profits despite these actions being contrary to State laws and regulations and contrary to local policies and the Agreement with the School District and despite also being a crime.

162.    Defendants' intentional actions and omissions to take actions utilizing knowingly false accusations and engage in a conspiracy between the individual Defendants to plan and initiate a public attack upon the School District and its Superintendent is a wrongful act on the part of each Individual Defendant.

163.    The intent of each Defendant was to defraud the School District to maximize the amount of public monies without fulfilling its duties to comply with State law and regulations and with local policies as to the quantity and quality of education services to each student.

WHEREFORE, Plaintiff the Board of Education for the Gallup-McKinley County Schools requests the entry of a judgment for the School District and against each Defendant by this Court to include:

A.    A finding that each Defendant had a duty to deal fairly, equitably and justly with the School District and its Superintendent and breached their duties and failed to honor their legal commitments under State law and local policies;

**EXHIBIT A**

B.      Enter a Judgment against each Defendant and in favor of the Plaintiffs for actual damages as proven at trial;

C.      For such other and further relief as the Court deems proper.

## COUNT IV
## CIVIL CONSPIRACY

164.    The Plaintiffs re-allege and incorporate by reference the foregoing Paragraphs 1 through 163 as if fully set forth herein.

165.    The individual Defendants formed a conspiracy by agreement to take actions to minimize Defendant Stride's overhead costs by cutting and failing to hire teachers and support staff, such as counselors to maximize its profits despite these actions being contrary to State laws, regulations, local policies and the Agreement with the School District.

166.    The individual Defendants formed a conspiracy by agreement to take actions to minimize Defendant Stride's overhead costs by hiring unqualified and untrained teachers to maximize its profits despite these actions being contrary to State laws, regulations, local policies and the Agreement with the School District.

167.    The individual Defendants formed a conspiracy by agreement to take actions to maximize Defendant Stride's profits by reporting false, incomplete and inaccurate student data to make it appear that more students than were in attendance at Stride's program despite these actions being contrary to State laws and regulations and contrary to local policies and the Agreement with the School District and being a crime.

168.    The individual Defendants formed a conspiracy by agreement to take actions utilizing knowingly false accusations and the conspiracy engaged between the individual

**EXHIBIT A**

Defendants to plan and initiate a public attack upon the School District and its Superintendent is a wrongful act on the part of each Individual Defendant.

169.    The individual Defendant agreed to the wrongful and illegal acts and omissions set forth in Paragraphs 11 through 120.

170.    Each individual Defendant agreed to fail to provide the legally mandated instruction by qualified staff and comply with local policies on education to the students enrolled with Stride's program.

171.    The individual Defendants agreed to the wrongful act of defrauding the School District and taking public funds without justification, authority or right.

172.    Each individual Defendant knew or should have known that each had no right or privilege to take the actions and engage in the omissions set forth above in Paragraphs 11 through 120 and that any agreement to do so was a wrongful and actionable act.

173.    Each Defendant's acts and omissions are the proximate cause of the damages, to be proven at trial, including the loss, misappropriation and illegal transfer of the School District's monies for services not rendered and causing harm to students and their education.

174.    Each Defendant's acts and omissions are the proximate cause of the damages, to be proven at trial, including the loss and harm to the liberty interests and reputations of the Plaintiff Hyatt causing harm to him.

175.    The actions and omissions of each Defendant were taken to the detriment of the School District and its Superintendent and were reckless, malicious, willful and wanton.

176.    The actions and/or omissions of each Defendant were intentional, willful, grossly negligent and/or made in reckless disregard for the truth and in violation of the rights of the School

**EXHIBIT A**

District and its Superintendent, such that the Plaintiffs are entitled to the award of punitive damages against each Defendant jointly and/or individually.

WHEREFORE, Plaintiffs request the entry of a judgment for each Plaintiff and against each Defendant by this Court to include:

A.    A finding that each Defendant had a duty to deal fairly, equitably and justly with the Plaintiffs under State laws and regulations and under local policies and an order to return all of the School District's money for services not rendered and for damages caused to each Plaintiff;

B.    Enter a Judgment against each Defendant and in favor of the Plaintiffs for actual damages as proven at trial;

C.    Enter a Judgment against each Defendant and in favor of the Plaintiffs for punitive damages in amount to be established at trial;

D.    Enter a Judgment against each Defendant and in favor of the Plaintiffs for its costs and expenses, and pre-judgment and post judgment interest; and,

E.    For such other and further relief as the Court deems proper.

## COUNT V
## TORTIOUS INTERFERENCE WITH A CONTRACT

177.    The Board of Education for the Gallup-McKinley County Schools re-alleges and incorporates by reference the foregoing Paragraphs 1 through 176 as is fully set forth herein.

178.    Defendant Stride's and the individual Defendants' conduct as set forth herein and specifically in Paragraphs 11 through 119, are incorporated herein.

41

**EXHIBIT A**

179.    Each individual Defendant, on behalf of and for Defendant Stride, had knowledge of the contractual obligations Defendant Stride had under the Agreement between the Board of Education and Stride, Inc.

180.    Each Defendant refused to perform pursuant to the provisions of the Agreement between the parties.

181.    Each Defendant played an active and substantial part in causing the School District to lose the benefits of its agreement for the benefit of the student enrolled with Defendant Stride.

182.    Damages flowed from the breaches of the contract.

183.    Each Defendant induced the breaches, in without justification or privilege to do so.

184.    The exact amount of damages will be proved at the time trial based on a necessary audit of the actions and omissions of each Defendant and other evidence, including through discovery.

185.    The material breaches of the Agreement were intentional, willful, grossly negligent and/or made in reckless disregard for the rights of the School District, such that the School District is entitled to the award of punitive damages against each Defendant or against Defendants jointly.

186.    The School District is entitled to recover from the Defendants for each and every payment made by the School District after September 30, 2023, and for any profits or unlawful gain obtained by Defendants for their illegal actions and/or omissions.

WHEREFORE, Plaintiff School District requests the entry of a judgment for the School District and against Defendants by this Court to include:

A.    Entry of a Judgment against each Defendant and in favor of School District for an amount to be proven at trial;

**EXHIBIT A**

B.      Enter a Judgment against each Defendant and in favor of School District for actual and punitive damages as proven at trial;

C.      Enter a Judgment against each Defendant and in favor of the School District for its costs and expenses, and pre-judgment and post judgment interest; and,

D.      For such other and further relief as the Court deems proper.

## COUNT VI
## UNJUST ENRICHMENT

187.    The School District re-alleges and incorporates by reference the foregoing Paragraphs 1 through 187 as is fully set forth herein.

188.    Defendant Stride's conduct as set forth herein and specifically in Paragraphs 11 through 120, is incorporated herein.

189.    Based upon the provisions of the Agreement and the appliable State law and regulations, Defendant Stride was contracted to comply with all laws and local policies and maintain records of safety training, testing, attendance and examination of students; and operate its program in an efficient manner.

190.    Defendant Stride acting contrary to the best and lawful interests of its students, directed, ordered or otherwise had the company fail to adequately fund, staff and train its staff to operate the program and service students, reduced overhead costs to maximize profits and failed to record and report student information to the School District and operate the program in an efficient manner.

191.    Defendant Stride failed to provide legally mandated instruction by qualified staff and comply with local policies on education.

43

**EXHIBIT A**

192.    Defendant Stride misrepresented and/or defrauded the School District by concealing and taking unilateral actions to engage in profiteering on the education of students in failing to meet its obligations and duties.

193.    Defendant Stride failed to operate in an efficient manner to provide an education to students equal or better than that provided to students by the School District for in-person instruction.

194.    Defendant misled and/or defrauded the School District to increase his profits and obtain stock market benefits in the increase value for its stocks based on inflated profits obtained through illegal and wrongful acts and omissions.

195.    It would be inequitable and contrary to the Agreement between the parties for Defendant Stride to retain the benefit of contracted services and profit from the actions of fraud and its misrepresentations or from its illegal and wrongful acts and omissions.

196.    The School District is entitled to recover the overpayments to Defendant under the Agreement for the lack of education of students and any profits from Defendant Stride's illegal compensation arising from its illegal and wrongful acts and omissions.

WHEREFORE, Plaintiff Board of Education for the Gallup-McKinley County Schools requests the entry of a judgment for the School District and against Defendant Stride by this Court to include:

A.    Entry of a Judgment against Defendant Stride for unjust enrichment and in favor of Plaintiff Board of Education for an amount to be proven at trial; and,

B.    For such other and further relief as the Court deems proper.

44

**EXHIBIT A**

## COUNT VII
## DEFAMATION

197.    The Plaintiff Hyatt re-alleges and incorporates by reference the foregoing Paragraphs 1 through 197 as if fully set forth herein.

198.    Under New Mexico law, a *prima-facie* case for the tort of defamation includes: (1) a published communication by the defendant; (2) the communication includes an asserted statement of fact; (3) the communication was concerning the plaintiff; (4) the statement of fact is false; (5) the communication was defamatory; (6) the persons receiving the communication understood it to be defamatory; (7) the defendant knew the communication was false or negligently failed to recognize that it was false, or acted with malice; (8) the communication caused actual injury to the plaintiff's reputation; and (9) the defendant abused its privilege to publish the communication.

199.    Defendants have made untrue statements about Plaintiff Hyatt both verbally to other third parties, including but not limited to media outlets and entities for members of the public, including for parents and guardians to see or read.

200.    As part of the defamation and disinformation campaign, the outside attorneys for Stride were authorized and filed an informal complaint against the School District's Superintendent with the New Mexico Ethics Commission alleging that Stride did not do anything wrong in its business practices and that it was the victim of retaliation by a vindictive public official abusing his authority adversely effecting Mr. Hyatt's liberty interests in his reputation and his employment.

201.    The individual Defendants formed a conspiracy by agreement to take actions utilizing knowingly false accusations and the conspiracy engaged between the individual

45

**EXHIBIT A**

Defendants to plan and initiate a public attack upon Plaintiff Hyatt is a wrongful act on the part of each Individual Defendant and establishes actual malice.

202.     These statements have been construed by Defendants to be fact.

203.     These statements have been untrue and defamatory towards Plaintiff Hyatt.

204.     Defendant knew these statements to be untrue.

205.     These statements have cause actual injury to Plaintiff Hyatt.

WHEREFORE, Plaintiff Hyatt requests the entry of a judgment for him and against Defendants by this Court to include:

A.     Entry of a Judgment against each Defendant, individually or jointly, and in favor of Plaintiff Hyatt for an amount to be proven at trial;

B.     Enter a Judgment against each Defendant, individually or jointly, and in favor of Plaintiff Hyatt for actual and punitive damages as proven at trial;

C.     Enter a Judgment against each Defendant, individually or jointly, and in favor of Plaintiff Hyatt for its costs and expenses, and pre-judgment and post judgment interest; and,

D.     For such other and further relief as the Court deems proper.

## COUNT VIII
## NEGLIGENT MISREPRESENTATIONS

206.     The School District re-alleges and incorporates by reference the foregoing Paragraphs 1 through 206 as if fully set forth herein.

207.     Defendants knew or should have known of the requirement under State law and regulations and under local policies to provide a quality education for students equal to or better than the provided to students in the School District receiving in-person instruction.

46

**EXHIBIT A**

208.    Defendants knew or should have known of the requirement under State law and regulations and under local policies to meet all statutory and regulatory requirements incorporated in to the Agreement between the Parties.

209.    Defendants knew or should have known of the requirement under the State law and regulations and under local policies to provide safety training, professional teacher training, student testing and sufficient record keeping and reporting to the School District.

210.    Defendants knew or should have known of the requirement under the State law and regulations and under local policies to provide special education services and other student services rather than maximize profits over student well-being.

211.    Defendants knew or should have known of the requirement under the State law and the PED regulations to meet all required teacher-to-student ratios in classroom, teacher qualifications, licensure requirements, teacher training necessary to meet its obligations under the Agreement between the parties.

212.    Defendants knew or should have known of the requirement under the State law and regulations and under local policies to operate in an efficient manner and not use more public funds than necessary and not to defraud public monies through illegal and wrongful acts and omissions.

213.    Defendants provided a written guarantee to the School District; by freely and voluntarily negotiating and executing the Agreement that it would comply with the Agreement and with the incorporated State law and requirements of the original RFP.

214.    Defendants negligently disregarded the contractual requirements, statutory and regulatory requirements in order to increase its profits through the use of knowingly false, incomplete and inaccurate reporting and by unauthorized reduction in overhead costs below those required by State law at the expense and detriment of students.

**EXHIBIT A**

215.    Defendant Stride, while contracted to provide a certain quality of education, negligently disregarded its obligations for profit that was illegally and wrongfully obtained.

216.    Defendant Stride's representations to the School District in executing the Agreement are negligently false, incomplete, inaccurate and misleading as to the quality and quantity of education provided to students enrolled with Stride.

217.    Defendant Stride acted negligently when it failed to hire, train, qualify, retain and direct and supervise its administrators and teachers to provide the contracted for quality and quantity of education services for its students as required under the State law and regulations and local policy incorporated into the Agreement between the parties.

218.    Defendant Stride acted negligently when it failed to record and report truancy and lack of equipment and Internet services being provided to students and remedying same as required under State law and regulations and local policy incorporated into the Agreement.

219.    Defendant acted negligently when it sought public monies from the School District based on false, incomplete and inaccurate assertions from Defendant Stride that education and services to students required under State law and regulations and under local policies was being provided.

220.    Defendant negligently misled the School District in obtaining public monies while failing to meet its obligations under the State law and regulations and under local policies.

221.    In doing so, Defendant Stride negligently misled the School District to increase its profits and obtain stock market benefits by lower teaching costs for education and services for financial profit to the detriment of students.

222.    Defendant was negligent in honoring the statutory, regulatory and contractual requirements in order to increase its profits.

**EXHIBIT A**

223.    The falsity or inaccuracy of the representations made by Defendant Stride were material.

224.    Defendant Stride had no reasonable grounds to believe its representations of honoring its legal obligations were true.

225.    The representations were made by Defendant Stride with intent that the School District rely on the false representations to contract for services not rendered to receive unearned and unjustified compensation.

226.    The School District relied on the false representations by Defendant Stride.

227.    The direct and proximate cause of Defendant Stride's false and/or negligent representations is that the School District has been damaged in an amount to be proven at trial, and the School District has had to engage legal counsel to recover unearned compensation and illegal compensation generated as direct result of Defendant Stride's misrepresentations.

228.    The exact amount of damages will be proved at the time trial based on a necessary audit of monies Defendant obtained while violating the law and breaching legal duties by the School District and other evidence, including through discovery.

229.    The representations made by Defendant Stride and relied upon by the School District were grossly negligent and/or made in reckless disregard for the truth and the rights of the School District, such that the School District is entitled to the award of punitive damages against Defendant Stride.

WHEREFORE, Plaintiff Board of Education requests the entry of a judgment for the School District and against Defendant Stride by this Court to include:

A.    Compensatory damages in the amount to be established and proven at trial;

49

**EXHIBIT A**

B.     Punitive damages in an amount to be established at trial to deter Defendant's conduct in the future from engaging in negligent conduct resulting in false and material misrepresentations relied on to the detriment of the School District and the public;

C.     Attorney's fees, cost and expenses in an amount to be established at trial, and pre-judgment and post judgment interest; and,

D.     For such other and further relief as the Court deems proper.

## COUNT IX
## PRIMA FACIE TORT

230.     The School District and its Superintendent re-alleges and incorporates by reference the foregoing Paragraphs 1 through 230 as if fully set forth herein.

231.     Defendants' actions caused damage to the School District and to its Superintendent by and through Defendants' intentional and fraudulent business practices were willful, intentional, and were intended to damage the School District and to its Superintendent by only benefiting Defendants.

232.     Defendants' negligent actions caused damage to the School District and to its Superintendent by and through Defendants' negligent business practices and has damaged the School District and its Superintendent by only benefiting Defendants.

233.     Defendants had a duty to conduct its company's business practices in a fair, equitable and just manner respectful of the legal and contractual rights of the School District and its Superintendent and to comply with all State laws and regulations and local policies.

234.     Defendants breached that duty.

235.     Defendants' actions and omissions directly and proximately damaged and

**EXHIBIT A**

continues to damage the School District and its Superintendent who has had to engage legal counsel to recover damages caused and unearned compensation and illegal compensation generated by Defendants' actions and omissions as direct result of Defendants' misrepresentations, falsehoods whether intentional or negligent.

236.    There is no justification for Defendants' actions and/or omissions.

237.    The actions and omissions of Defendants were taken to the detriment of the School District's governmental obligations and the Superintendent's reputation and liberty interests and were reckless, malicious, willful and wanton.

238.    The actions and/or omissions of Defendants were intentional, willful, grossly negligent and/or made in reckless disregard for the legal and contractual rights of the School District and its Superintendent, such that the School District and the Superintendent are entitled to the award of punitive damages against Defendants, individually or jointly.

WHEREFORE, Plaintiffs request the entry of a judgment for the School District and for the Superintendent and against Defendants by the Court to include:

A.    A finding that Defendants have a duty to deal fairly, equitably and justly with the School District under its Agreement with the Board of Education and that Defendants breached that duty;

B.    Enter a Judgment against Defendants and in favor of the School District for actual damages as proven at trial;

D.    Enter a Judgment against Defendants and in favor of the School District for punitive damages in amount to be established at trial;

**EXHIBIT A**

E.      Enter a Judgment against Defendants and in favor of the School District for its costs and expenses, and pre-judgment and post judgment interest; and,

F.      For such other and further relief as the Court deems proper.

**COUNT X**
**MALICIOUS ABUSE OF PROCESS**

239.    The School District re-alleges and incorporates by reference the foregoing Paragraphs 1 through 239 as if fully set forth herein.

240.    The elements for the tort of malicious abuse of process are as follows: (1) the use of process in a proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages.

241.    Defendants are using the process of binding arbitration without probable cause since management representatives have already admitted to breaching the contract and the use of a systemic plan to maximize profits at the expense of student education harming the students enrolled to be education by Defendants.

242.    Defendants have also filed actions against the School District for alleged violations of the Open Meetings Act with probable cause when the School District has been in substantial compliance with the Act or the alleged violation can be remedied in timely fashion.

243.    Defendants have also appealed the RFP to replace Defendant Stride without probable cause.

244.    Defendants filed and used the arbitration process for the illegitimate end of causing vexation, retribution and to multiple the costs to the School District for challenging Defendants illegal and wrongful conduct.

**EXHIBIT A**

245.    The actions and omissions of each Defendant were taken to the detriment of the School District and were reckless, malicious, willful and wanton.

WHEREFORE, the School District requests the entry of a judgment for the School District and against Defendants by the Court to include:

A.    A finding that Defendants have a duty to deal fairly, equitably and justly with the School District and not engage in legal actions that are based on vexation and retribution and that Defendants breached that duty;

B.    Enter a Judgment against Defendants and in favor of the School District for all its attorney's fees and costs associated with defense of the arbitration action;

C.    Enter a Judgment against Defendants and in favor of the School District for all its attorney's fees and costs associated with defense of OMA complaint and administrative appeals pending in this Court;

D.    Enter a Judgment against Defendants and in favor of the School District for punitive damages in amount to be established at trial;

E.    Enter a Judgment against Defendants and in favor of the School District for pre-judgment and post judgment interest; and,

F.    For such other and further relief as the Court deems proper.

## COUNT XI
## DECLARATORY JUDGMENT

246.    The School District re-alleges and incorporates by reference the foregoing Paragraphs 1 through 246 as if fully set forth herein.

**EXHIBIT A**

247.    An actual controversy exists between the parties thereby rendering declaratory relief proper pursuant to RULE 1-057 NMRA and the New Mexico Declaratory Judgment Act, NMSA 1978, Sections 44-6-1 through -15 (1975).

248.    Section 10-16-8 (1) of the Governmental Conduct Act states that the School District cannot enter into a contract if the value is over $1,000, involving a prior School District employee who made official acts that led to the contract.

249.    Under the Act, the employee must sit out for one (1) year.

250.    Despite the requirement of the Governmental Conduct Act, Defendant Stride actively recruited and hired an employee of the School District who was part of the RFP development process, which violates the Act.

251.    The School District is barred from entering into or continuing with a contract that violates the Governmental Conduct Act.

252.    The only appropriate remedy for an illegal contract between Defendant Stride and the School District is to void the contract.

253.    Defendant Stride's hiring of this employee is also a violation of the executed Agreement at Paragraph 21.1, and Paragraph 21.2, and the School District is entitled to damages of one year of the former employee's base salary.

254.    The School District has the authority under Section 13-1-182 to terminate the contract as of May 16, 2025 for Defendant Stride's violations of law and doing so is in the best interests of the School District.

255.    Plaintiffs are entitled to a declaratory judgment establishing the respective rights and obligations of the parties with respect to the claims set forth herein.

**EXHIBIT A**

WHEREFORE, the School District requests the entry of a judgment for the School District and against Defendants by the Court to include:

A.    A finding that the Agreement between the School District and Defendant Stride is void, as a matter of law.

B.    A judgement for the School District and against Defendant Stride for one year's salary of the School District employee that Defendant Stride illegally recruited and hired.

C.    A finding the School District is authorized to terminate the contract between Defendant Stride and the Board of Education upon a determination that it is in the best interests of the School District.

D.    For such other and further relief as the Court deems proper.

## COUNT XII
## INJUNCTIVE RELIEF

256.    The School District re-alleges and incorporates by reference the foregoing Paragraphs 1 through 256 as if fully set forth herein.

257.    Based on the illegal and wrongful acts and omissions related to Defendant Stride's failure to comply with the terms of the contract between Defendant Stride and the Board of Education, the Chief Procurement Officer determined that there is now a dispute as to the payment due to Defendant Stride in accordance with Section 13-1-158 of the Procurement Code.

258.    Defendant Stride failed to comply with the demand made by the School District's Chief Procurement Officer for a full and complete audit of Defendant pursuant to Section 13-1-161 of the Procurement Code.

**EXHIBIT A**

259.    The School District is entitled to an order of the Court compelling Defendant Stride to comply with all audit requirements under the Procurement Code, including demands already made.


WHEREFORE, Plaintiffs request the entry of a judgment for Plaintiffs and against Defendants for all the damages and the costs and declaratory and injunctive relief set forth above and any other remedy the Court deems just and proper.

Respectfully submitted,

HIMES, PETRARCA & FESTER, CHTD.


By:    _/s/ Andrew M. Sanchez_____
        ANDREW M. SANCHEZ
        5051 Journal Center Blvd. NE, Suite 320
        Albuquerque, New Mexico  87109
        (505) 259-2069
        asanchez@edlawyer.com

        **ATTORNEYS FOR THE BOARD OF EDUCATION**
        **FOR THE GALLUP-MCKINLEY COUNTY**
        **SCHOOLS AND SUPERINTENDENT OF**
        **SCHOOLS MICHAEL HYATT**

**EXHIBIT A**

## VERIFICATION AND ACKNOWLEDGEMENT

STATE OF NEW MEXICO    )
                       ) ss.
COUNTY OF McKINLEY     )

I, Mike Hyatt, being first duly sworn upon my oath, depose and state that I am the Superintendent of Schools for the Gallup-McKinley County Schools in the above-entitled cause; that I have read the ***VERIFIED COMPLAINT FOR FRAUD, UNFAIR TRADE PRACTICES, CONSTRUCTIVE FRAUD, CIVIL CONSPIRACY, TORTIOUS INTERFERENCE WITH A CONTRACT, UNJUST ENRICHMENT, DEFAMATION, NEGLIGENT MISREPRESENTATIONS, PRIMA FACIE TORT, MALICIOUS ABUSE OF PROCESS, DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF***, know the contents thereof, and that the matters and things therein set forth are true to my own knowledge, save where the same are or must of necessity be set forth upon information and belief, and as to those statements I believe the same to be true.


MIKE HYATT, Superintendent for the Gallup-McKinley County Schools and agent and representative of the Board of Education for Gallup-McKinley County Schools


On August 26, 2025, before me personally appeared Michael Hyatt, personally known to me OR proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted executed the instrument.

Witness my hand and official seal.

Signature of Notary Public

Printed Name of Notary Public

STATE OF NEW MEXICO
JENNIFER LEE
NOTARY PUBLIC
Commission #: 1071614
Expiration Date: 11/24/2025

My Commission Expires:
11/24/2025

SEAL

**EXHIBIT A**