## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BOARD OF EDUCATION FOR THE GALLUP-
McKINLEY COUNTY SCHOOLS and
MICHAEL HYATT as its Superintendent of
Schools,

        Plaintiffs,

v.                                                                          Case No. 1:25-cv-00890-MLG-DLM

STRIDE, INC., a Delaware Corporation d/b/a K12        **JURY DEMANDED**
VIRTUAL SCHOOLS, LLC, JAMES RHYU, as
the Chief Executive Officer and Chair of the Board
of Directors of Stride, Inc., PETER STEWART As
the Senior Vice President of School Development
for Stride, Inc., RYAN STUTLER, as the Vice
President of Finance for Stride, Inc., and ADAM
HAWF, as its Superintendent of Schools,

        Defendants.

## MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COME NOW Plaintiffs, Board of Education for the Gallup-McKinley Schools and Michael Hyatt, as its Superintendent of Schools, by and through their attorneys of record, Andrew M. Sanchez of Himes, Petrarca & Fester, Chtd., and for their Memorandum Brief in Support of Plaintiffs' Motion for Preliminary Injunction, state as follows:

### I.  RELEVANT FACTS

The Board of Education for the Gallup-McKinley County Schools is the governing body of the Gallup-McKinley County School District ("School District").  The School District serves students from preschool through 12th grade.  Plaintiff Michael Hyatt ("Hyatt") is the

Superintendent of Schools for the School District. K12 Virtual Schools, Inc. ("K12") is a for-profit corporation that provides virtual education services.

In June of 2020, the School District entered into an educational products and services agreement with K12 ("Contract" or "Agreement"). [*Doc. 8-2*]. The Contract contemplated the creation of a full-time virtual online school program serving School District students to be administered and implemented by K12. [*Doc. 8-2* at p. 3. 1]. The Contract is governed by New Mexico law. [*Doc. 8-2* at p. 18].

The Contract contains an Arbitration Agreement that compels Plaintiffs to resolve "all disputes arising in connection with this Agreement" via arbitration pursuant to "the then-existing rules of the American Arbitration Association." [*Doc 8-2* at p. 18.] In contrast, Defendants remain free under the Contract to seek judicial remedies in several important contexts. First, the Contract states that "K12 may seek immediate judicial relief as available in law or equity" to resolve disputes over its intellectual property rights. [*Doc 8-2* at p. 18.] Second, in the event of a material breach by the School District, the Contract provides that "K12 reserves the right to invoke any remedies available to it". [*Doc 8-2* at p. 6.] Finally, the Contract allows K12 to "file suit in a court of competent jurisdiction to recover all past due amount" in the event of a dispute over contractual payments. [*Doc 8-2* at p. 9.]

Throughout the duration of the Agreement between the Parties, and as explained more fully in Plaintiffs' First Amended Complaint, Defendants committed numerous violations of New Mexico state law, including failure to hire qualified teachers and failure to comply with class size requirements. [*See Doc. 39* at ¶¶ 11-125[1].] These legal violations culminated in a whistleblower complaint filed by a management representative at K12 on May 2, 2025, revealing knowledge of

---

[1] The Plaintiffs' First Amended Complaint was filed on the day prior to this Motion and is on the Court's docket as [*Doc. 39.*]

and acquiescence to legal violations on behalf of K12's senior leadership. *See id*. Faced with public revelations of wrongdoing, Defendants formulated a plan to "attack first." *See id*. Pursuant to this plan, K12 facilitated the release of defamatory media reports about Hyatt and the School District. K12 also initiated involuntary arbitration against the School District without proper bases for any of its claims. [*Doc. 27* at p. 10.]

## II.    PROCEDURAL BACKGROUND

Plaintiffs filed this suit in the Eleventh Judicial District Court for McKinley County, State of New Mexico on August 27, 2025. Plaintiffs brought claims arising from K12's intentional and knowing violation of State and federal laws, including claims for fraud, unfair trade practices, constructive fraud, civil conspiracy, tortious interference with a contract, unjust enrichment, defamation, negligent misrepresentation, prima facie tort, and malicious abuse of process. Defendants removed to the United States District Court for the District of New Mexico on September 26, 2025. [*Doc 1-4*.]

Defendants filed a motion to compel arbitration and stay proceedings on October 6, 2025. [*Doc. 8*.] Plaintiffs responded on October 24, 2025, arguing that the Arbitration Agreement is substantively unconscionable due to its one-sided prohibition on judicial relief, applicable only to Plaintiffs. [*Doc. 27*.] Defendants filed their Reply on October 30, 2025. [*Doc. 30*.] Most recently, the Parties jointly moved on November 12, 2025, to file surreplies to complete briefing on the Motion to Compel Arbitration. [*Doc. 38*.]

The School District submitted pleadings in the arbitration seeking to stay the proceedings until this Court determines whether the issue of unconscionability bars the arbitration in the first instance. Despite the substantial and credible risk that continued litigation within the arbitration

would be futile and costly should the Arbitration Agreement be determined to be unconscionable by this Court, the assigned Arbitrators, however, declined to stay the proceedings. As such, the School District is subject to irrevocable harm. *See Cordova v. World Fin. Corp. of NM*, 2009-NMSC-021, ¶ 38, 146 N.M. 256, 266, 208 P.3d 901, 911 (N.M. 2009) ("We will not allow our courts to be used to enforce unconscionable arbitration clauses any more than we will allow them to be used to enforce any other unconscionable contract in New Mexico.").

Additionally, on December 12, 2025, Plaintiffs filed an amended complaint seeking, amongst other additional claims, declaratory and injunctive relief rendering the Agreement between the Parties void, as a matter of law, due to its unconscionability.

Pursuant to RULE 65 of the FEDERAL RULES OF CIVIL PROCEDURE, Plaintiffs now move for the entry of a preliminary injunction to enjoin the arbitration proceedings brought by Defendants until this Court can determine the validity of the Arbitration Agreement between the Parties.

## III.    APPLICABLE LAW

Where a party asserts that their claims are not subject to arbitration, the Federal Arbitration Act supports the following courses of action: (1) seek an injunction, or (2) refuse to arbitrate and fight any motion to compel. *See Waked v. Kerr*, No. CIV 22-0596 JB/JMR, 2024 WL 1539788, at *37 (D.N.M. Apr. 9, 2024). A court has discretion to grant a preliminary injunction when a movant demonstrates the existence of four elements: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). A preliminary injunction is appropriate where monetary or other traditional legal remedies are inadequate to

compensate the movant for the harm they will incur without the injunction. *See City of Albuquerque v. Barr*, 515 F.Supp.3d 1163, 1172 (D.N.M. 2021).

There are several reasons for granting preliminary injunctions. The "primary purpose for such an order is 'the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act'" *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (*en banc*) (Murphy, J., concurring) (quoting 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2947, at 123 (2d ed.1995)). Courts also grant preliminary injunctions to "preserve the relative positions of the parties until a trial on the merits can be held." *Id.* (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

## IV.    ARGUMENT

### A. Plaintiffs' have demonstrated substantial likelihood that they will succeed in demonstrating that the Arbitration Agreement is unconscionable, and that Plaintiffs did not delegate the issue of arbitrability of claims.

The first prong of the preliminary injunction analysis requires the movant to demonstrate a substantial likelihood that they will succeed on the merits of their claims. *Ortega v. Grisham*, 148 F.4th 1134, 1142 (10th Cir. 2025). Where a movant seeks to enjoin the enforcement of an arbitration agreement, the likelihood of success on the merits depends on the specific provisions of the arbitration agreement. *See Tiffany v. KO Huts, Inc*., 178 F.Supp.3d 1140, 1145 (W.D. Okla. 2016). Where an agreement is unconscionable or does not apply to certain claims, a preliminary injunction to enjoin arbitration proceedings is appropriate. *Id*. at 1149.

### i.   The Arbitration Agreement is unconscionable.

Where the validity of an arbitration agreement is contested, the presumption favoring arbitration disappears. *Dumais v. American Golf Corp*., 299 F.3d 1216, 1220 (10th Cir. 2002).

Agreements to arbitrate may be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract", such as unconscionability. 9 U.S.C. § 2; *see also Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Unconscionability is analyzed under state law. *See Mangu v. Clifton Gunderson LLP*, No. Civ. 13-00187 LH/CG, 2013 WL 12329842, at *4 (D.N.M. 2013). In New Mexico, unconscionability is an equitable doctrine that allows "courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Cordova v. World Fin. Corp.*, 2009-NMSC-021, 146 N.M. 256, 262, 208 P.3d 901, 907 (N.M. 2009). The unconscionability of an arbitration agreement may be scrutinized through two lenses: substantive unconscionability, which examines the legality and fairness of the agreement terms, and procedural unconscionability, which concerns the circumstances surrounding the formation of the contract. *Figueroa v. THI of N.M. at Casa Arena Blanca*, LLC, 2013-NMCA-077, 306 P.3d 480, 489 (N.M. Ct. App. 2012). While elements of both substantive and procedural unconscionability may be present in an agreement, "there is no absolute requirement in [New Mexico] law that both must be present to the same degree or that they both be present at all." *Cordova*, 2009-NMSC-021, ¶ 24, 146 N.M. at 263, 208 P.3d at 908.

New Mexico courts have found arbitration agreements to be unconscionable where the agreement provides access to the judicial system to only one party. In *Rivera v. American Gen. Fin. Servs., Inc.*, the New Mexico Supreme Court found that an arbitration agreement that required one party to submit all claims to arbitration but allowed the other party to reserve the "right to a judicial determination of its most important claims" was unconscionable. 2011-NMSC-033, 150 N.M. 389, 259 P.3d 803, 816 (N.M. 2011); *see also Cordova*, 146 N.M. at 263-64 (invalidating arbitration agreement that barred one party from court entirely while allowing the other party the

opportunity to "carve out a choice of forum for its own preferred claims"). Here, the Arbitration Agreement between the parties is unreasonably one-sided and mirrors the agreements found unconscionable in *Rivera* and *Cordova*. While Plaintiffs are entirely barred from seeking judicial remedies for any claim, the Agreement provides several opportunities for Stride to seek judicial intervention for claims it is most likely to litigate in a dispute. For example, Stride is entitled to seek "immediate judicial relief as available in law or equity" for breaches of intellectual property rights. [*Doc 8-2* at p. 10.] Additionally, the Agreement provides that Stride may "file suit in a court of competent jurisdiction to recover all past due amount" in the event of nonpayment by the School District. [*Doc. 8-2* at p. 9.] Finally, the Agreement reserved Stride's right to "invoke any remedies available to it" if the School District were to materially breach the agreement. [*Doc. 8-2* at p. 6.] In contrast, Plaintiffs are bound to arbitrate "all disputes arising in connection with this Agreement." [*Doc 8-2* at p. 18.] The practical implication of these provisions is an unfair, unreasonably one-sided arbitration scheme that must be found substantively unconscionable.

### ii. The Parties did not agree to arbitrate arbitrability.

Even if this Court finds that the arbitration agreement is not unconscionable, a preliminary injunction enjoining the arbitration until this court can rule on the arbitrability of Plaintiffs' specific claims is necessary, as Plaintiffs did not agree to arbitrate the arbitrability of claims under the Agreement. When faced with a dispute over the propriety of arbitration, courts must first decide whether the parties intended for a court or an arbitrator to decide the arbitrability of claims before deciding whether the arbitration agreement governs the claims at issue. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Importantly, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (*quoting AT&T Technologies, Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986).

For example, in *First Options*, the Supreme Court found that appearance before the arbitrator before filing a claim in federal court was not enough to demonstrate that the parties agreed to arbitrate the question of arbitrability.  514 U.S. at 946.  Even an agreement by the parties that the arbitrator would decide "disputes relating to interpretation" of the arbitration agreement was not enough evidence to demonstrate that the parties intended the arbitrator to decide the arbitrability of claims.  *See Perez v. Qwest Corp.*, 883 F.Supp.2d 1095, 1114-15, 1118 (D.N.M. 2012).  In addition, the New Mexico Uniform Arbitration Act provides that "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." N.M. STAT. ANN. § 44-7A-7(b).

The Tenth Circuit held that arbitrability was a matter for the court to decide where the arbitration agreement was broadly written to include "any and all disputes arising out of or relating to" the agreement, and the contract was negotiated "against background principles of Florida and Kansas law," two states where, as a matter of law, arbitrability is a question for the courts.  *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 780 (1998).  An agreement's mere reference to the rules of an arbitral body, without more, cannot demonstrate clear and unmistakable evidence that the parties intended to delegate the arbitrability issue to the arbitrator.  Moreover, for an arbitration clause that specifies governing rules of a specific arbitral body to properly delegate arbitrability, the clause must specify the *specific* set of rules to be used in the event of a dispute.  *See Clements v. Alto Trust Co.*, 685 F.Supp.3d 1249, 1267 (D.N.M. 2023) (denying motion to compel arbitration because absent reference to specific set of AAA rules in the arbitration clause, intent to delegate was not clear or unmistakable).

In their Motion to Compel Arbitration, Defendants referenced *Dish Network* and *Belnap* in support of the argument that the arbitration agreement here clearly delegates the issue of

arbitrability.  [*Doc. 8* at p. 15]; *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1279 (10th Cir. 2017); *Dish Network LLC v. Ray*, 900 F.3d 1240 (10th Cir. 2018).  However, in those cases, the arbitration agreement clearly specified the specific set of rules to be used.  *Belnap*, 844 F.3d at 1275 (JAMS Rules); *Dish Network*, 900 F.3d at 1242 (AAA National Rules for the Resolution of Employment Disputes).  Here, there is no clear and unmistakable evidence that the Parties intended to arbitrate arbitrability issues.

As in *Riley Manufacturing Co*., the Contract was negotiated against the backdrop of State law providing that courts should decide whether a controversy is subject to an agreement to arbitrate.  N.M. STAT. ANN. § 44-7A-7(b).  The Contract contains no reference to delegation, unlike the agreement in *Perez*, which stated that the arbitrator would decide disputes of interpretation of the arbitration agreement.  The language in *Perez*, however, was still not sufficient to demonstrate delegation. As the Contract here contains no such language, the Court should find there was no agreement to delegate.

Defendants similarly cannot demonstrate an agreement to delegate by pointing to the inclusion of the AAA rules within the delegation clause.  The AAA provides services for many areas of dispute resolution, and it has over thirty sets of rules and procedures for arbitration.[2] Identical to the arbitration agreement in *Clements*, the agreement here makes reference only to the fact that the arbitration will be governed by the rules of the American Arbitration Association. Without further specification as to which rules will be used, there is not clear and unmistakable evidence that the Parties ever intended to delegate arbitrability to the Arbitrators.  Therefore, this Court should enjoin the enforcement of the Arbitration Agreement until it decides the issue of the

---

[2] *See* American Arbitration Association, *Rules, Forms, and Fees* (2025), https://www.adr.org/rules-forms-and-fees/.

arbitrability of Plaintiffs' claims, because the Agreement does not provide clear and unmistakable evidence of the Plaintiffs' intent to delegate the issue of arbitrability to an arbitrator.

#### B. PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF SUBJECTED TO ARBITRATION UNDER AN UNCONSCIONABLE ARBITRATION PROVISION.

To demonstrate the existence of irreparable harm, the movant must point to "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages. *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). The Tenth Circuit has not yet ruled on whether a significant risk of harm results from forcing a party to arbitrate where the arbitration agreement at issue is unconscionable and arbitrability is yet undecided. However, district courts within the Tenth Circuit have held that irreparable harm results where a party is forced to arbitrate non-arbitrable issues or disputes they never agreed to arbitrate due to the "time, energy, costs and fees associated with defending an unnecessary arbitration, as well as the potential cost of setting aside any unfavorable arbitration result". *See Monavie v. Quixtar Inc.*, 741 F.Supp.2d 1227, 1241 (D. Utah 2009); *see also Orchard Securities LLC v. Pavel*, 2013 WL 4010228, at *5 (D. Utah 2013) ("Absent issuance of a preliminary injunction, [movant] will be required to participate in discovery and resolution of a case in a forum lacking the substantive and procedural safeguards provided in our courts").

The Plaintiffs in this case, if continued to be subject to the ancillary arbitration proceedings between the Parties, face similar irreparable harm as the movants in *Monavie* and *Orchard Securities*. Forcing Plaintiffs to arbitrate under an unconscionable arbitration agreement is contrary to public policy and robs Plaintiffs of the substantive and procedural safeguards provided by this Court. Additionally, Plaintiffs, a public school district and an educator, have been forced to expend significant time, energy, costs, and fees associated with defending the baseless claims brought against them by Stride through the one-sided Arbitration Agreement.

10

## C. THE BALANCE OF EQUITIES FAVOR THE GRANT OF A PRELIMINARY INJUNCTION.

The third prong of the preliminary injunction analysis requires the movant to demonstrate that the irreparable harm to the movant outweighs the harm to the non-movant if the preliminary injunction is granted. *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 806 (10th Cir. 2019). Preliminary injunctions exist to preserve the status quo, or the status that existed between the parties before the non-movant filed a demand for arbitration. *Monavie*, 741 F.Supp.2d at 1242. The balance of equities favor enjoining the arbitration to preclude further arbitration proceedings where the movant disputes the enforceability of an arbitration agreement. *Id*. The irreparable harm to Plaintiffs, if forced to continue arbitration under an unconscionable Arbitration Agreement, greatly outweighs any harm to Defendants if the preliminary injunction is granted.

Plaintiffs seek preliminary relief to enjoin arbitration while this Court determines the validity of the Arbitration Agreement. Accordingly, if "Plaintiffs ultimately prevail on the issue of arbitrability, [Defendants] will have lost no 'bargained for contractual rights to arbitration' because it had none." *Monavie*, 751 F. Supp.2d at 1242. On the other hand, if Defendants "ultimately prevail on that issue, the preliminary injunction will be dissolved, and [Defendants] may proceed to exercise those rights." *Id*. It is clear that the harm of a brief delay in arbitration proceedings to adjudicate unconscionability is greatly outweighed by the harm faced by Plaintiffs if continually subjected to one-sided, unconscionable arbitration.

## D. GRANTING A PRELIMINARY INJUNCTION TO RESOLVE GATEWAY ARBITRABILITY QUESTIONS IS NOT ADVERSE TO THE PUBLIC INTEREST.

The final prong of the analysis requires the movant to demonstrate that the preliminary injunction would not be adverse to the public interest. *See Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012). In the context of arbitrability disputes, the public interest is served by "preventing

parties from wielding their arbitration processes as a weapon to harass, intimate, and ultimately bankrupt their opponents." *Monavie*, 751 F. Supp.2d at 1243, *quoting Kellogg Brown & Root Servs. v. Altanmia Commer. Mktg. Co. W.L.L.*, 2007 WL 4190795, *19–20 (S.D.Tex. Nov. 21, 2007). Conversely, the public interest is not served by prematurely subjecting a party contesting the validity of an arbitration agreement to arbitration before the court resolves "gateway arbitrability questions." *See Tiffany v. K.O. Huts, Inc*., 178 F.Supp.3d 1140, 1149 (W.D. Okla. 2016). Here, subjecting Plaintiffs to arbitration prior to determining gateway questions of arbitrability, including the validity of the Arbitration Agreement and its unconscionability, is adverse to the public interest. Plaintiffs must be awarded an opportunity to demonstrate the unconscionability of the Arbitration Agreement prior to being subject to its authority. The provision of such an opportunity is in accord with the public interest.


V.      **CONCLUSION**

WHEREFORE, Plaintiffs respectfully request that this Court issue a preliminary injunction barring the arbitration proceedings between the Parties.

Respectfully submitted,

HIMES, PETRARCA & FESTER, CHTD.

By: ___/s/ Andrew M. Sanchez_____
ANDREW M. SANCHEZ
5051 Journal Center Blvd. NE, Suite 320
Albuquerque, New Mexico 87109
(505) 259-2069
asanchez@edlawyer.com

ATTORNEYS FOR THE BOARD OF EDUCATION
FOR THE GALLUP-MCKINLEY COUNTY
SCHOOLS AND SUPERINTENDENT OF
SCHOOLS MICHAEL HYATT

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that the foregoing was electronically filed through the Court's CM/ECF system, which caused all counsel of record to be served via electronic means on December 13, 2025, as more fully reflected on the Notice of Electronic Filing.


HIMES, PETRARCA & FESTER, CHTD.

By:   */s/ Andrew M. Sanchez*     
   ANDREW M. SANCHEZ