IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BOARD OF EDUCATION FOR THE GALLUP-
McKINLEY COUNTY SCHOOLS and
MICHAEL HYATT as its Superintendent of
Schools,

           Plaintiffs,

v.

STRIDE, INC., a Delaware Corporation d/b/a K12
VIRTUAL SCHOOLS, LLC, JAMES RHYU, as
the Chief Executive Officer and Chair of the Board
of Directors of Stride, Inc., PETER STEWART As
the Senior Vice President of School Development
for Stride, Inc., RYAN STEWART, as the Vice
President of Finance for Stride, Inc., and ADAM
STEWART, as its Superintendent of Schools,

           Defendants.

Case No. 1:25-cv-00890-MLG-DLM

**JURY DEMANDED**

**PLAINTIFFS' RESPONSE TO PETER STEWART'S MOTION TO DISMISS**

COME NOW Plaintiffs, Board of Education for the Gallup-McKinley County Schools, and Michael Hyatt, as its Superintendent of Schools(collectively "School District"), by and through their attorneys of record, Himes, Petrarca & Fester, Chtd. (Andrew M. Sanchez), and as their Response to Defendant Peter Stewart's Motion to Dismiss, state as follows:

**I.    THIS COURT HAS PERSONAL JURISDICTION OVER STEWART**

This Court has specific personal jurisdiction over Defendant Peter Stewart concerning the events described in the Complaint and the Amended Complaint [*Doc* 1-1 pp. 2-58 and *Doc* 39]. "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state **and** that the exercise of

jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Strobel v. Rusch*, 364 F. Supp. 3d 1270, 1278 (D.N.M. 2019), *quoting Davis v. USA Nutra Labs*, 2016 WL 9774945, at *3 (D.N.M. Dec. 21, 2016) (emphasis in original); *see McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, (1936); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). This is because Defendant Stewart has personally and purposefully directed contacts to New Mexico on a consistent, continuing, and regular basis, and as a result, the School District and New Mexico children have suffered harm. The School District's burden to demonstrate that personal jurisdiction exists is not an onerous one as this case is in the early stage of litigation before discovery, and the School District need only make a *prima facie* showing of personal jurisdiction. *See Strobel,* 364 F.Supp.3d at 1278. Here, New Mexico's long-arm statute "'extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible,' such that jurisdiction is authorized by the long-arm statute only if it is permitted under the Due Process Clause." *Id.*, *quoting Tercero v. Roman Catholic Diocese*, 2002-NMSC-018, ¶ 6, 132 N.M. 312, 316, 48 P.3d 50, 54 (N.M. 2002) (citing *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006)). "To satisfy Due Process requirements, the defendant must have (1) sufficient minimum contacts with the forum state (2) such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Strobel,* 364 F.Supp.3d at 1278-79, *quoting McManemy v. Roman Catholic Church of Diocese of Worcester*, 2 F.Supp.3d 1188, 1198 (D.N.M. 2013) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

When considering a motion to dismiss for lack of personal jurisdiction, the Court must accept as true all well pleaded facts alleged by the School District unless the Defendant controverts those facts by affidavit. *Id.* Notably, Defendant Stewart's affidavit does not dispute any allegations made against him in Plaintiffs' Complaint and Amended Complaint. *See* [*Doc* 1-1 pp.

2-58 and *Doc* 39][1]. As such, the School District has met this light burden, and the Motion should be denied.

    **A.   THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT STEWART.**

Due process requirements are satisfied against Defendant Stewart, because he has sufficient minimum contacts with New Mexico such that maintenance of the School District's suit against him does not offend traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-473 (1985) (a forum may legitimately exercise personal jurisdiction over a nonresident who purposefully directs his activities toward forum residents). As described below, Defendant Stewart has extensive, continuing and sufficient contacts with New Mexico that he should reasonably anticipate being subject to suit in this Court and in the State courts. He has purposefully directed his activities to and interacted with New Mexico residents, including school districts and through services to New Mexico children, and this case results from substantial injuries related to his activities.

Defendant Stewart is the Senior Vice President of School Development of Stride, Inc. *See* [*Doc* 1-1 at p. 3; ¶ 5 and *Doc* 39 at ¶ 5]. According to his biographical information previously on Stride's website, Stewart works with school districts to start new high-tech schools using the Stride academic program. His role was to develop the online educational program for school districts and other Stride clients. He has made and continues to make executive and management decisions about virtual programs implemented for New Mexico students. *See* Press Release describing that although Defendants no longer have a partnership with Plaintiffs, Defendants have continuing and

---

[1] Defendant Stewart's affidavit does not dispute his position with Defendant Stride and does not dispute any of the Zoom conversations alleged in Plaintiffs' Complaint and Amended Complaint and implication of his direction and approval of illegal actions and facts giving rise to Plaintiffs' claims. [*Doc* 1-1 pp. 2-58, ¶¶ 11-120 and *Doc* 39, ¶¶ 11-125]

current partnerships with other New Mexico school districts here: https://s26.q4cdn.com/126400783/files/doc_news/Stride-Inc--Signs-Multi-District-Agreements-to-Operate-K12-Powered-Online-School-in-New-Mexico-2025.pdf.

Mr. Stewart was responsible for developing the Destinations Career Academy of New Mexico (the "Program") pursuant to Defendants' agreement with the School District.  His failure to ensure that the Program was funded, the agreement between the Parties was followed, that Defendants complied with the law and that New Mexico children received the promised educational products and services violated Defendants' agreement with the School District, violated federal and State law requirements, and is the focus of this lawsuit.[2]  Defendant Stewart's specific actions to deny the School District and New Mexico students the promised Program included continuous communications with a New Mexico resident, employed by Stride K12 to direct the Program locally (the "Whistleblower") with other Stride executives.  *See* [*Doc* 1-1 at pp. 5 and 19, ¶¶ 18 and 71; *Doc* 39 at ¶¶ 18 and 71].  Some of these interactions are described by the Whistleblower in **Exhibit A** attached hereto.  The Whistleblower indicates that he had "multiple meetings" with Defendant Stewart.  *See* **Exhibit A** at p. 3.  As described in the Complaint and in the Amended Complaint and in **Exhibit A**, Defendant Stewart was involved in various meetings and conversations with the New Mexico resident Whistleblower about the Program's staffing and finance needs that were not being met and that such actions constituted a violation of law and the Parties' agreement.  *See id*.  Without sufficient appropriately licensed staff, the Program that Defendant Stewart had developed could not be implemented for the School District's students as promised.  Rather than encourage his fellow executives to remedy Defendants' wrongs, Defendant

---

[2] The Destinations Career Academy of New Mexico still exists.  *See* **https://nmdca.k12.com**.  Although Plaintiffs' students no longer participate in the program, other New Mexico students still enroll in the virtual programming.

Stewart directed the group to attack Plaintiffs publicly. *See* [*Doc* 1-1 at pp. 23-27, ¶¶ 98-120; *Doc* 39 at ¶¶ 98-125]. Not only did Defendant Stewart communicate specifically with the Whistleblower, in New Mexico, to consider Program staffing concerns, but he also collaborated with other administrators and executives of Stride to provide educational products and services in New Mexico, knowing that the company for which he was the Vice President of Finance was not fulfilling the terms of the contract, was violating New Mexico and federal law and was harming New Mexico students. *See id*. He participated in determinations that a sufficient number of teachers would not be hired for the Program. *See id*. He also directed and participated in decisions to attack Plaintiff Hyatt to detract attention away from Defendants' failures. *See* [*Doc* 1-1 at pp. 23-24, ¶¶ 98-104; *Doc* 39 at ¶¶ 98-105].

Mr. Stewart's contacts with Plaintiffs and with the State of New Mexico in this case are similar to the sufficient minimum contacts held by this Court in *Strobel,* 364 F.Supp.3d at 1279-1280. In *Strobel,* the defendant participated in organizing and managing the business that was the subject of the dispute, communicated with plaintiffs by mail, internet, and telephone, and pursued a business relationship through these contacts. *Id.* at 1280. In this case, Defendant Stewart participated in the financing, management, and implementation of the Program and by collaborating in this partnership with Plaintiffs, he availed himself of the advantages of transacting business in New Mexico. He purposefully directed communications to New Mexico by virtually meeting, speaking, and emailing with the Whistleblower. He continues to have direct contact to New Mexico in the form of other school district partnerships.

Although Stewart's continued communications were by virtual platform, rather than in person, these communications constitute purposeful direction. *See Lawrence v. Next Insurance, Inc.,* 774 F.Supp.3d 237, 252 (D.Mass. 2025) (remote contacts suffice as a substantial connection

5

in another state whenever the defendant deliberately directs his efforts towards the forum state). In *Lawrence*, the district court held that a company CEO who communicated with and supervised an employee in the forum state over a virtual meeting platform had purposely availed himself of the benefits and protections of the forum state. *See id*. These virtual meetings created specific personal jurisdiction. *See id*. Likewise in this case, Defendant Stewart participated in numerous Zoom meetings with the New Mexico Whistleblower, Plaintiff Hyatt, and others managing the New Mexico Program, and these contacts provide for specific personal jurisdiction. Defendant's claim that remote contact is not sufficient contact is perplexing. He lives in a different state from Stride's corporate headquarters in Virginia, so his contacts are remote with his own company. Furthermore, the subject of this dispute is an online educational program in which all contacts with students are virtual. In today's world of virtual communication, zoom meetings, email correspondence, telephone calls, and text messages can clearly constitute sufficient minimum contacts with a forum state. *See id*.

Under both the fiduciary shield doctrine and the no imputed contacts rule, Mr. Stewart's mere status as an employee or executive does not insulate him from personal jurisdiction. *See Newsome v. Gallacher,* 722 F.3d 1257, 1276 (10th Cir. 2013). The Due Process Clause may not be wielded so easily as a territorial shield to avoid interstate obligations that a defendant has assumed. *See Burger King, supra* at 474. Instead, a defendant's contacts within the forum state must be assessed individually. *See Newsome,* 722 F.3d at 1276. The communications alleged in Plaintiffs' Complaint and Amended Complaint and in **Exhibit A**, which are undisputed by Defendant Stewart's affidavit, show that Defendant Stewart had numerous contacts with the Whistleblower in New Mexico in order to continue the Program in New Mexico and maximize profiteering of public monies at the expense of students.

Furthermore, as Defendant Stewart admits, the fiduciary shield doctrine does not apply when the employee seeking to wield the shield is a primary participant in the alleged wrongdoing intentionally directed at the forum state. *See Smith v. Cutler*, 504 F.Supp.2d 1162, 1169-1170 (D.N.M. 2007). As alleged by the School District and unrebutted by Defendant Stewart's affidavit, **Stewart was a primary participant because he directed the civil conspiracy to publicly attack and take other legal actions against Plaintiffs as a strategy to avoid taking responsibility for Defendants' failure to implement the Program as promised.** See [*Doc* 1-1 at p. 24, ¶ 104; *Doc* 39 at ¶ 105] (emphasis added); *see Leong v. SAP America, Inc.*, 901 F.Supp.2d 1058, 1065 (N.D.Ill. 2012) (fiduciary shield doctrine does not apply when high ranking company officer makes discretionary decisions about hiring and firing and compensation). Upon information and belief, Defendant Stewart has a financial interest in the decision he made to prioritize profiteering over educating students as required by the Parties' agreement.

In *Smith*, the fiduciary shield did not apply because the defendant personally engaged in conduct that led to the dispute and to harm in the forum state. *See Cutler*, 504 F.Supp.2d at 1169-1170. As in *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.,* 514 F.3d 1063, 1076 (10th Cir. 2008), Defendant Stewart purposefully directed his conduct to the forum state, knew the location of his business, and knew that Plaintiffs' injuries arose from his contacts with New Mexico, which New Mexico is the focal point of this dispute. *Id.* at 1076. Defendant Stewart's interactions were individual and personal and therefore the "no imputed contracts" rule does not apply. *Strobel, supra* at 1282. Additionally, dismissing Defendant Stewart on the basis of the fiduciary shield doctrine makes little sense, when Defendant Stewart **was** directly involved in the business of failing to provide the promised online instruction for Plaintiffs' students in New Mexico. *See*

7

*Strobel, supra* at 1283. As such, this Court has specific personal jurisdiction over Defendant Stewart.

**B. THE COURT'S EXERCISE OF JURISDICTION COMPORTS WITH FAIR PLAY AND SUBSTANTIAL JUSTICE**

Defendant Stewart bears the burden of showing that exercising personal jurisdiction over him would be unreasonable and must present a compelling case. *See Rusakiewicz v. Lowe,* 556 F.3d 1095, 1102 (10th Cir. 2009) ("such cases are rare."). Defendant Stewart's motion to dismiss provides no argument that this Court's exercise of personal jurisdiction would offend fair play and substantial justice. In considering reasonableness of exercising personal jurisdiction, the Court considers (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in efficient resolution of controversies and (5) the shared interest of the several states in furthering fundamental social policies. *See Pro Axess, Inc, v. Orlux Distribution, Inc.*, 428 F.3d 1270, 2779-2780 (10th Cir 2005). Litigation in New Mexico will not place a substantial burden on Defendant Stewart. Modern transportation and communication have made it much less burdensome for a party to defend himself in a State in which he engaged in economic activity. *See Burger King, supra* at 474.

New Mexico has a substantial interest in in litigating this dispute. Not only have Plaintiffs been harmed by Defendants' failure to provide the promised educational Program, but a substantial number of New Mexico students were harmed and lost educational opportunities that they can never recover but which must be mitigated in compensational services. As noted in the Complaint and in the Amended Complaint, the New Mexico Public Education Department has been informed of Defendants' violations of New Mexico law by the Whistleblower. *See* [*Doc* 1-1 at pp. 19, ¶¶ 72-74; *Doc* 39 at ¶¶ 72-74]; *see also* **Exhibit A**. The Destinations Career Academy of New Mexico

continues to operate and do business in New Mexico, with other school districts. *See e.g.*, *Turner W. Branch, P.A. v. Attorney for You,*, 2016 WL 7428214, \*6 (D.N.M. 2016) (defendant in doing business here has demonstrated his ability to travel to New Mexico for business as such "the Court finds that forcing Defendant [] to litigate this dispute in New Mexico is neither 'gravely difficult' nor sufficiently 'inconvenient.'") (quoting *Burger King, supra* at 478).

The School District will be required to file lawsuits in separate states if this Court declines jurisdiction, which will be neither convenient nor effective. Personal jurisdiction is necessary to prevent piecemeal litigation. There is a shared interest in litigating in New Mexico because the harm arose from Defendant Stewart's relationship and contacts in New Mexico. Public policies in New Mexico are served by addressing disputes over educating and funding the education of New Mexico students and by adjudication of claims regarding illegal activity in the State resulting in the defrauding of New Mexico public monies. *See Turner W. Branch, supra* at \*7. As such, this Court has specific personal jurisdiction over Defendant Stewart, because he has personally and purposefully directed contacts to New Mexico on a consistent and regular basis from which the Plaintiffs and New Mexico children have suffered harm.

## II. PLAINTIFFS CONTINUE TO ATTEMPT TO SERVE DEFENDANT STEWART

Plaintiffs continue to attempt to locate the correct address for Defendant Stewart so that he can be served. He appears to have multiple Montana addresses. Plaintiffs ask the Court to extend the time for service or alternatively to allow Defendant Stewart to be served by email.

### A. TIMELINE OF SERVICE ATTEMPTS

Below is the timeline of events for attempting to serve Defendant Stewart:

August 27, 2025: Wendy Olivas, Himes Petrarca & Fester, Chtd. ("HPF") paralegal sent an email to Defendant's counsel attaching the verified complaint. *See* **Exhibit B**. Later that same day, undersigned counsel sent an email to Defendants' counsel asking if they would accept service for Defendants. *See* **Exhibit C**.

September 15, 2025: Nineteen days later, Defendants' counsel stated that they would accept service on behalf of Stride, Inc., but did not answer regarding the individual defendants. *See* **Exhibit D**.

September 26, 2025: Defendants' counsel filed an amended notice of removal, as ordered by the Court. *See* [*Doc* 5]. That same day paralegal Olivas sent the first attempted service of the verified complaint packet containing the State Court pleadings and Federal Docs. 1-5 to Defendant Stewart at Stride's office in Herndon, Virginia at the address designated for "official notices" under the parties' agreement that established the Program. *See* **Exhibit E**.

October 15, 2025: The service attempt was returned to HPF because corporate offices apparently were moved, without notice to Plaintiffs under parties agreement. *See* **Exhibit E**.

November 13, 2025: Paralegal Olivas attempted service again on Defendant Stewart at Stride, Inc.'s new address in Reston, Virginia that she found online. *See* **Exhibit F**. This attempted service is the subject of Defendant Stewart's motion to dismiss.

November 17, 2025: The verified complaint was delivered to Stride, Inc. corporate offices in Reston, Virginia. Paralegal Olivas had not obtained a summons for the original verified complaint. *See* **Exhibit F**.

December 12, 2025: Plaintiffs filed an Amended Complaint. *See* [*Doc* 39].

December 18, 2025: Summons was issued by the Clerk of the Court for the Amended Complaint. Paralegal Olivas sent the Summons and Amended Complaint, Motion for Preliminary Injunction and Brief in Support thereof (Docs. 39-41) both to Stride, Inc.'s Corporate offices in Reston, VA and to Defendant Stewart at a Montana residence address she found for him through research. *See* **Exhibit G**.

December 22, 2025: The Summons and Amended Complaint were delivered to corporate offices in Reston, VA. *See* **Exhibit H**. On that same date, Defendants' counsel filed a special appearance for

10

>Defendant Stewart from the same law firm and filed a motion to dismiss based in part on insufficient and untimely service from November. *See* [Doc 47]. The Summons and the Amended Complaint was attempted for delivery to Defendant Stewart in Bozeman, Montana. However, Defendant Stewart was not residing at the Bozeman address. *See* **Exhibit I**. Paralegal Olivas discovered that there were multiple addresses for Stewart in Montana.
>
>December 23, 2025: Defense Counsel filed an appearance on behalf of Defendant Stewart. *See* [*Doc* 48].
>
>December 24, 2025: Plaintiffs' counsel filed a Declaration of Service indicating proper service of Defendant Stewart. *See* [*Doc* 50].

**B.  THERE IS GOOD CAUSE TO ALLOW FOR AN EXTENSION OF TIME TO SERVE DEFENDANT STEWART OR FOR ALTERNATIVE MEANS OF SERVICE.**

FEDERAL RULE OF CIVIL PROCEDURE 4(m) provides that if the plaintiff shows good cause for the failure to timely serve a defendant, the court must extend the time for service for an appropriate period. The Tenth Circuit has explained that even if there is not good cause, the Court has broad discretion to grant an extension. *See Espinoza v. United States,* 52 F.3d 838, 840-841 (10th Cir. 1995). In this case, there is good cause for an extension of time because Defendant Stewart has multiple addresses in Montana, and Plaintiffs are therefore trapped in a guessing game of which address at which to attempt service. *See, e.g.*, *Bruce v. United Parcel Services, Inc.*, 2007 WL 4208715, *2 (W.D.Okla. 2007).

In *Bruce*, the court granted an extension of time, even when it found that the plaintiff had not demonstrated good cause for delay, because the defendant had multiple addresses from which the plaintiff was required to choose. *Id.* at *2. Similarly, in this case Paralegal Olivas has needed to research multiple addresses for multiple defendants because their counsel unreasonably refused to accept service. Had Ms. Olivas been lucky enough to choose the correct address for Defendant Stewart, his service would have been timely.

11

Service was required to be made within ninety days of removal to federal court. *See De Gutierrez v. Albuquerque Public Schs.*, 2108 WL 3647207, *5 (D.N.M. 2018), *citing* 28 U.S.C. § 1448. The Amended Notice required by this court was effective on September 26, 2025.[3] Therefore, ninety days for service to be completed fell on December 25, Christmas Day. According to this court's website, federal holidays included December 25 and December 26, so service was due on December 27, 2025. Plaintiffs attempted to serve Defendant Stewart on December 22, 2025, within the required ninety days from removal. His service would have been complete if the correct address had been chosen from multiple addresses or Defendants' counsel had not wished to prolong and complicate this litigation.

Because of the need to continue to attempt to find Defendant Stewart at various addresses, Plaintiffs request a reasonable period of time to serve Defendant Stewart. Alternatively, Plaintiffs request that the Court allow them to serve Defendant Stewart pursuant to New Mexico law by email. *See Mohon v. Agentra LLC*, 2023 WL 199210, *5 (D.N.M. 2023) (if Plaintiff does not assert that service of process is pursuant to the federal rules, the court will look at New Mexico law) and N.M. Supreme Court Order 0012 (N.M. 2025) (amending RULE 1-004 (F)(4) NMRA to include service by social media, email, or text message). Like the court in *Lawrence, supra,* the amended rule recognizes the current technological and virtual nature of today's daily life.

---

[3] Notably, Defendants claim removal occurred at different times in different motions, depending on what meets their needs for argument. In Stewart's Motion to Dismiss, he claims that the removal date is September 15, 2025 when Defendant Stride unsuccessfully attempted to remove this case to federal court. Defendants were ordered to file an amended notice of removal by September 26 because they had not properly asserted diversity jurisdiction. *See* [*Docs* 3 and 5). In Defendants' Motion to Strike the Amended Complaint, Defendants' counsel then argues that the Notice of Removal was September 26, 2025 for purposes of their deadline of filing an Answer or RULE 12(b)(6) motion. Despite arguing the correct removal date in **that** motion, Defendants missed their deadline of filing a response to the Complaint (*Doc* 1-1 pp. 2-58).

### C. DEFENDANT STEWART HAD A DUTY TO WAIVE SERVICE.

Moreover, pursuant to FED.R.CIV.P. 4(d)(1), Defendant Stewart had a duty to waive the unnecessary expenses of service. His counsel was asked to waive service on August 27, 2025, and his counsel did not respond. A defendant who does not waive service without good cause is required to pay the expenses of making the service, including attorney fees for any motion required to collect those expenses. Given that Defendant Stewart did not waive service and has multiple addresses in Montana to choose from, Plaintiffs ask this court to order Defendant Stewart to pay the expense of his service. *See id*.

WHEREFORE, Plaintiffs respectfully request that this Court:

(1) Deny Defendant Stewart's Motion to Dismiss because this Court has personal jurisdiction over Defendant Stewart;

(2) In the alternative, grant an extension of time to serve Defendant Stewart at one of his multiple addresses, or allow Plaintiffs to utilize the new RULE 1-004 NMRA and serve Defendant Stewart by email; and

(3) Order Defendant Stewart to pay Plaintiffs' reasonable costs of service for failure to waive service.

Respectfully submitted,

HIMES, PETRARCA & FESTER, CHTD.


By: _/s/ Andrew M. Sanchez_
      ANDREW M. SANCHEZ
      5051 Journal Center Blvd. NE, Suite 320
      Albuquerque, New Mexico 87109
      (505) 259-2069
      asanchez@edlawyer.com

**ATTORNEYS FOR THE BOARD OF EDUCATION FOR THE GALLUP-MCKINLEY COUNTY SCHOOLS AND SUPERINTENDENT OF SCHOOLS MICHAEL HYATT**


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed through the Court's CM/ECF system, which caused all counsel of record to be served via electronic means on January 5, 2026, as more fully reflected on the Notice of Electronic Filing.


HIMES, PETRARCA & FESTER, CHTD.


By: _/s/ Andrew M. Sanchez_
      ANDREW M. SANCHEZ